OPINION OF THE COURT
 

 Ciparick, J.
 

 In an effort to reduce the incidence of drunk driving on New York’s roadways, the State Legislature enacted the prompt suspension law (Vehicle and Traffic Law § 1193 [2] [e] [7]), which under certain circumstances mandates the suspension of a driver’s license to operate a motor vehicle pending prosecution for driving while intoxicated. We hold that the prompt suspension law accords with due process requirements.
 

 I.
 

 Background
 

 To supplement the government’s arsenal in its war against drunk driving, the Legislature enacted Vehicle and Traffic Law § 1193 (2) (e) (7), commonly known as the prompt suspension law (L 1994, ch 312).
 
 [1]
 
 Designed to provide "an efficient and effective means of balancing the need to maintain safe highways for the public and the rights of the criminal defendant” (Mem of Div of Budget, Bill Jacket, L 1994, ch 312), the prompt suspension law requires the suspension, pending prosecution, of the license of a driver charged with driving while intoxicated. Specifically, the law mandates that before the conclusion of all proceedings necessary for arraignment, the Judge must suspend the driver’s license of a person charged with driving while intoxicated upon determining that the ac
 
 *430
 
 cusatory instrument is sufficient on its face and finding reasonable cause to believe that the driver operated a motor vehicle with a blood alcohol level in excess of .10 of 1% as evidenced by the results of a chemical test (Vehicle and Traffic Law § 1193 [2] [e] [7] [a], [b]).
 
 [2]
 

 Michael Pringle was arrested and charged with driving while intoxicated per se and driving while intoxicated
 
 (see,
 
 Vehicle and Traffic Law § 1192 [2], [3]). Before Pringle was arraigned on these charges, he instituted this action seeking a declaratory judgment that the prompt suspension law (Vehicle and Traffic Law § 1193 [2] [e] [7]) is unconstitutional, and an order enjoining its enforcement against him. Supreme Court granted a preliminary injunction preventing the suspension of Pringle’s license pending prosecution and thereafter granted Pringle’s motion for summary judgment declaring that the prompt suspension law provides insufficient procedural protection in violation of the Due Process Clause of the Federal and State Constitutions. The Commissioner appeals to this Court as of right (CPLR 5601 [b] [2]) and we now reverse.
 

 
 *431
 
 II.
 

 Procedural Due Process
 

 It is well established that a driver’s license is a substantial property interest that may not be deprived without due process of law (see,
 
 Bell v Burson,
 
 402 US 535, 539). The issue on appeal, then, is what process is due to protect against the risk of its erroneous deprivation
 
 (id.,
 
 at 539-540;
 
 see, Curiale v Ardra Ins. Co.,
 
 88 NY2d 268, 274-275). To determine whether the temporary license deprivation worked by the prompt suspension law accords with due process requirements, we employ the balancing test articulated by the United States Supreme Court in
 
 Mathews v Eldridge
 
 (424 US 319, 335) and elucidated in subsequent cases upholding the procedural adequacy of driver’s license suspension schemes
 
 (see, Illinois v Batchelder,
 
 463 US 1112;
 
 Mackey v Montrym,
 
 443 US 1;
 
 Dixon v Love,
 
 431 US 105). We also bear in mind that the prompt suspension law, a legislative enactment, is entitled to a presumption of constitutionality, which will only be rebutted by a showing of the statute’s unconstitutionality beyond a reasonable doubt
 
 (see, City of New York v State of New York,
 
 76 NY2d 479, 485). The due process inquiry consists of a balancing of the following interests:
 

 "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail”
 
 (Eldridge,
 
 424 US, at 335,
 
 supra).
 

 A. Private Interest
 

 To determine the impact of the prompt suspension law on the private interest at stake — which can be generally defined as the substantial interest in retaining one’s license to drive pending criminal prosecution — we consider the availability and timing of a judicial hearing, the duration of the suspension, and the availability of hardship relief
 
 (see, Mackey,
 
 443 US, at 11-12,
 
 supra).
 
 As the following analysis demonstrates, the severity of the prompt suspension law is tempered by the driver’s right to a presuspension judicial hearing, its temporary duration, and the availability of a conditional license and hardship relief.
 

 
 *432
 
 Under the prompt suspension law, the court must hold a suspension hearing before the conclusion of the proceedings required for arraignment and before the driver’s license may be suspended (Vehicle and Traffic Law § 1193 [2] [e] [7] [b]). At the suspension hearing, the court must first determine whether the accusatory instrument is sufficient on its face and next whether there exists reasonable cause to believe that the driver operated a motor vehicle while having a blood alcohol level in excess of .10 of 1% as shown by a chemical test
 
 (id.).
 
 The court may not order suspension of the license unless it has in its possession the results of the chemical test, and, as the Commissioner concedes, these results must be presented to the court in certified, documented form
 
 (see,
 
 CPLR 4518 [c]). If the Judge affirms the sufficiency of the accusatory instrument and finds reasonable cause to believe the driver operated a motor vehicle with the proscribed blood alcohol level as evidenced by the documented results of a reliable chemical test, a prima facie showing for license suspension has been established.
 

 Once the prima facie showing is made, the statute provides that the driver "shall be entitled to an opportunity to make a statement regarding these two issues and to present evidence to rebut the court’s findings” (Vehicle and Traffic Law § 1193 [2] [e] [7] [b]). In interpreting this language, Supreme Court concluded that the statute requires that the court order the license suspension once a prima facie showing is made but
 
 before
 
 the driver is given an opportunity to present evidence — in effect denying the driver a right to be heard— which formed the basis of Supreme Court’s ruling of unconstitutionality. Because it is meaningless to allow the driver to "rebut the court’s findings”
 
 after
 
 the suspension is ordered, we reject Supreme Court’s myopic reading of the statutory language and hold that the driver is entitled to present evidence to rebut the court’s tentative findings before the court may order the license suspension.
 

 Pringle further contends that the statute provides inadequate notice of the license suspension proceeding. We disagree. First, the statute provides clear notice that the license suspension hearing will be held before the conclusion of all proceedings required for the arraignment
 
 (see, People v Demperio,
 
 86 NY2d 549, 552;
 
 see also, Commonwealth v Crowell,
 
 403 Mass 381, 386, 529 NE2d 1339, 1342 ["A person could hardly contemplate that there would be no adverse consequences flowing from test results showing a significant blood alcohol level. No specific warning concerning those consequences is constitution
 
 *433
 
 ally required”]). In addition, at the time of arrest, the driver is notified of the specific criminal charges and of the time and place of arraignment, eliminating any possibility that the suspension will be ordered in the driver’s absence. Finally, the statute expressly provides that the driver is "entitled to an opportunity * * * to present evidence tending to rebut the court’s findings,” which we construe as requiring an adequate opportunity to prepare for the license suspension hearing
 
 (see, Loretto v Teleprompter Manhattan CATV Corp.,
 
 58 NY2d 143, 149; McKinney’s Cons Laws of NY, Book 1, Statutes § 150). Thus, it would be incumbent on the court to grant a driver’s reasonable request for a short adjournment if necessary to marshal evidence to rebut the prima facie showing of "reasonable cause.”
 

 Aside from the availability of a presuspension hearing, the impact of the license suspension is tempered by its limited duration and the availability of relief from its terms. As a general rule, the prompt suspension law mandates the suspension of full driving privileges only until the disposition of the criminal proceeding. Although subject to procedural variations throughout the State, its duration is always constrained by the speedy trial limits of CPL 30.30. After a mandatory suspension period of 30 days, moreover, the driver is entitled to apply to the Commissioner for a "conditional” license (Vehicle and Traffic Law § 1193 [2] [e] [7] [d]). The conditional license, as prescribed by Vehicle and Traffic Law § 1196, permits the operation of a motor vehicle to and from a place of employment, during the hours of employment if the job requires, to and from school, and for medical treatment, and "shall remain in effect during the term of the suspension * * * unless earlier revoked by the commissioner” (Vehicle and Traffic Law § 1196 [7]).
 

 Additionally, the statute permits the arraigning court to grant hardship relief (Vehicle and Traffic Law § 1193 [2] [e] [7] [e]). If the driver is able to present evidence in addition to his own testimony that the license suspension will cause extreme hardship, the court may grant limited driving privileges to the licensee, including the privilege to "travel to or from the licensee’s employment, or to or from necessary medical treatment for the licensee or a member of the licensee’s household, or if the licensee is a matriculated] student enrolled in an accredited school, college or university travel to or from such licensee’s school, College or university if such travel is necessary for the completion of the educational degree or certifi
 
 *434
 
 cate” (Vehicle and Traffic Law § 1193 [2] [e] [7] [e]). Unlike the 30-day mandatory suspension period before a conditional license may be issued, hardship relief can be granted immediately upon suspension of the license.
 
 [3]
 

 B. Risk of Erroneous Deprivation
 

 The second factor in the
 
 Mathews v Eldridge
 
 balancing test is the risk of erroneous deprivation of the driver’s license through the license suspension procedure, bearing in mind that "[t]he Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations” (Mackey, 443 US, at 13,
 
 supra).
 
 We conclude that the risk of an erroneous deprivation under the prompt suspension law is minimal.
 

 The court may not order suspension of the driver’s license unless it has in its possession the documented results of a reliable chemical test showing that the driver’s blood alcohol level was in excess of .10 of 1%
 
 (see,
 
 Vehicle and Traffic Law § 1193 [2] [e] [7] [b];
 
 cf., People v Mertz,
 
 68 NY2d 136, 148). Moreover, the minimal risk of an erroneous suspension is further diminished by the driver’s right to a meaningful presuspension opportunity to rebut the chemical test results
 
 (see, Batchelder,
 
 463 US, at 1118,
 
 supra).
 
 Therefore, we conclude that the slight risk that the prompt suspension law will result in an erroneous deprivation does not dilute its constitutional adequacy.
 

 C. Governmental Interest
 

 The third factor is the importance of the State’s interest served by the prompt suspension law, measured against the increased burden of providing additional procedural safeguards. The Supreme Court has recognized the States’ "paramount interest” in maintaining highway safety. As a result, the States are "accorded * * * great leeway in adopting summary procedures to protect public health and safety”
 
 (Mackey,
 
 443 US, at 17,
 
 supra).
 

 
 *435
 
 To compel the State to provide another level of procedural protection would require plenary hearings and would effectively convert the license suspension proceeding into a trial on the merits of the underlying criminal charge
 
 (cf., Dixon,
 
 431 US, at 114,
 
 supra).
 
 Such a procedure would be prohibitively expensive and cumbersome, and would subvert the State’s compelling interest in promoting highway safety
 
 (see, Mackey, supra,
 
 at 18 ["The summary and automatic character of the suspension sanction available under the statute is critical to attainment of (its) objectives”]). In view of the temporary duration of the license suspension, such elaborate procedural protections are not constitutionally mandated.
 

 In sum, though the private interest affected by the prompt suspension law is substantial, the severity of the license suspension is mitigated by its temporary duration, the availability of a conditional license and hardship relief, and the significant protection of a presuspension judicial hearing, which militates heavily in favor of the statute’s constitutionality
 
 (see, Batchelder,
 
 463 US, at 1119,
 
 supra
 
 ["The driver’s right to a hearing
 
 before
 
 he may be deprived of his license * * * accords him all of, and probably more than, the process that the Federal Constitution assures”]). Further weighing against the driver’s interest in maintaining his license are the slight risk of an erroneous deprivation and the overriding State interest in "the prompt removal of a safety hazard” from its streets
 
 (Dixon,
 
 431 US, at 114,
 
 supra).
 
 Based on the foregoing, we hold that the prompt suspension law affords the driver all the process that is constitutionally due.
 

 III.
 

 Vagueness
 

 Supreme Court expressed the concern, without ruling, that the prompt suspension law is unconstitutionally vague. In that court’s view, there was an "inherent problem” posed by the statutory requirement that the court suspend the license of one who "at the time of arrest” had a blood alcohol level over .10 of 1% (Vehicle and Traffic Law § 1193 [2] [e] [7] [a]) because "it is
 
 not
 
 a crime to be intoxicated at the time of arrest, but only at the point of operating the motor vehicle.”
 

 Due process requires that a civil statute contain "a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms”
 
 (Foss v City of Rochester,
 
 65 NY2d 247, 253). As the
 
 *436
 
 Commissioner persuasively argues, the language in subclause (a) of section 1193 (2) (e) (7) must be read in conjunction with subclause (b), which provides that a prima facie showing for license suspension is established only when the court finds reasonable cause to believe the driver operated a motor vehicle with the proscribed blood alcohol level. The language of subclause (a) does not alter this required prima facie showing and consequently does not render the statute void for vagueness.
 

 The parties’ remaining contentions have been considered and are found to be without merit.
 

 Accordingly, the judgment of Supreme Court should be reversed, with costs, and Vehicle and Traffic Law § 1193 (2) (e) (7) declared constitutional.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Levine concur; Judge Titone taking no part.
 

 Judgment reversed, etc.
 

 [1]
 

 . Although the prompt suspension law was due to expire on November 1, 1996
 
 (see,
 
 L 1994, ch 312, § 7), the Legislature has extended the statute’s term for one year
 
 (see,
 
 L 1996, ch 229). While we note the various constitutional challenges to the prompt suspension law currently pending in the lower courts, we. only have occasion to reach those issues squarely presented on this appeal.
 

 [2]
 

 . The statute provides in pertinent part:
 

 "(7) Suspension pending prosecution; excessive blood alcohol content, a. A court shall suspend a driver’s license, pending prosecution, of any person charged with a violation of subdivision two or three of section eleven hundred ninety-two of this article who, at the time of arrest, is alleged to have had .10 of one percent or more by weight of alcohol in such driver’s blood as shown by chemical analysis of blood, breath, urine or saliva, made pursuant to subdivision two or three of section eleven hundred ninety-four of this article.
 

 "b. The.suspension occurring under this subparagraph shall occur no later than at the conclusion of all proceedings required for the arraignment; provided, however, that if the results of any test administered pursuant to section eleven hundred ninety-four of this article are not available within such time period, the complainant police officer or other public servant shall transmit such results to the court at the time they become available, and the court shall, as soon as practicable following the receipt of such results and in compliance with the requirements of this subparagraph, suspend such license. In order for the court to impose such suspension it must find that the accusatory instrument conforms to the requirements of section 100.40 of the criminal procedure law and there exists reasonable cause to believe that the holder operated a motor vehicle while such holder had .10 of one percent or more by weight of alcohol in his or her blood as was shown by chemical analysis of such person’s blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this article. At the time of such license suspension the holder shall be entitled to an opportunity to make a statement regarding these two issues and to present evidence tending to rebut the court’s findings” (Vehicle and Traffic Law § 1193 [2] [e] [7] [a], [b]).
 

 [3]
 

 . We find unpersuasive Pringle’s argument that the court’s ability to grant hardship relief violates the separation of powers doctrine. In granting the relief, the Judge engages in the judicial function of assessing the hardship caused by the suspension and making the judicial determination, authorized by statute, that the defendant’s circumstances warrant partial relief from the suspension in the form of limited driving privileges. To the extent that the court acts in an administrative capacity, the Legislature is not prohibited by the separation of powers doctrine from conferring on the judicial branch administrative functions such as the license suspension procedure that are " 'reasonably incidental to the performance of judicial duties’ ” (see,
 
 Clark v Cuomo,
 
 66 NY2d 185, 189, quoting
 
 Matter of Rosenthal v McGoldrick,
 
 280 NY 11, 14;
 
 cf., Matter of O’Brien v Keegan,
 
 87 NY2d 436).