OPINION OF THE COURT
Mark M. Meddaugh, J.
The petitioner has applied to this court for a declaration that *188 the provisions of 15 NYCRR parts 134 through 136 are affected by an error of law, are arbitrary and capricious and an abuse of discretion. The regulations at issue allow the Department of Motor Vehicles (DMV) to revoke a person’s driver’s license, permanently or for an extended period of time, due to a history of alcohol-related driving offenses. The petitioner also seeks an order restoring the petitioner’s driving privileges, and such other and further relief as this court finds just and proper.
Background
The underlying facts in this proceeding are undisputed by the parties.
The petitioner was arrested for driving while intoxicated (DWI) on August 19, 2011, and was convicted, upon a plea of guilty, on September 2, 2011 for a misdemeanor DWI.
The petitioner asserts that, at the time of his plea, he was advised that his license would be revoked for six months as a result of the misdemeanor charge, but that, thereafter, he would be allowed to apply to have his license reinstated.
An order of suspension or revocation was issued on September 6, 2011, which provided that pursuant to section 1193 (2) of the Vehicle and Traffic Law, the petitioner’s driver’s license/ privilege was “revoked for at least six months,” effective September 6, 2011.
The petitioner indicates that, on April 17, 2012, he sought treatment with the Callicoon Counseling Center, where he was diagnosed and treated for alcohol abuse. The petitioner asserts that he is disabled as the result of a back injury and his counselor taught him how to cope with his disability, instructed him on the proper use of pain medication for his chronic pain, and on the avoidance of alcohol. The petitioner further indicates that, as a result of his treatment, he stopped drinking, and he was positively discharged from treatment on July 24, 2012.
The petitioner had previously been arrested on October 27, 2008 for driving while ability impaired, and was convicted on November 18, 2008. The petitioner had also been arrested on December 22, 1987 for DWI, and was convicted on February 26, 1988.
In February of 2012, the petitioner applied to have his license restored upon the expiration of the minimum statutory period of revocation, which was due to expire on March 6, 2012. The DMV held the petitioner’s application for restoration, pending the promulgation of amendments to part 136 of title 15 of the *189 Official Compilation of Codes, Rules and Regulations of the State of New York.
By letter dated November 5, 2012, the respondent advised the petitioner that his application was denied on the basis that he was “deemed a persistently dangerous driver,” citing 15 NYCRR 136.5 (a) (3) and (b) (3) (i). The DMV notified the petitioner that he would be eligible to submit an application for a new driver’s license five years after March 7, 2012.
The petitioner appealed the DMV’s determination on December 18, 2012 and, by decision dated January 29, 2013, his appeal was denied, based upon a lifetime review of the petitioner’s driving record, which included three alcohol- or drug-related incidents or convictions, along with numerous other convictions for moving violations. The respondent asserted that the petitioner did not apply, pursuant to 15 NYCRR 136.5 (d), for the Commissioner to review a denial of his application based upon a claim of “unusual, extenuating and compelling circumstances.”
The respondent, in its papers in opposition, explained the procedure followed by the DMV in this case, and the recent history of the regulations upon which it relied to deny the petitioner’s application to be re-licensed. As set forth by the respondent, when a person’s driver’s license is revoked, with minor exceptions, that person must make an application to the DMV’s Driver Improvement Unit (DIU) for re-licensing, which reviews the application in accordance with the criteria set forth in 15 NYCRR part 136.
The respondent indicated that part 136 was amended on February 23, 2011, “to strengthen the DMV’s ability to deny re-licensing to problem drivers!1 [1]1” The amendment extended the “look back” time to review an applicant’s lifetime driving record, to assess whether such applicant fits into the “problem driver” category and should be denied an application for re-licensing for at least a year, in addition to any statutorily imposed minimum revocation period. It does not appear, *190 however, that the application of the February 2011 amendments are at issue in this proceeding, since the DMV denied the petitioner’s application to be re-licensed for five years, rather than one year.
The respondent then asserted that, because the 2011 amendments to part 136 did not keep recidivist drug and alcohol impaired drivers off the roadways for any extended period of time, in early 2012 the DMV began to hold all applications for re-licensing, where the applicant had three or more alcohol- or drug-related offenses, pending the adoption of further amendments to part 136.
On September 25, 2012, the DMV filed a “Notice of Emergency Adoption and Proposed Rulemaking” regarding 15 NYCRR parts 3, 134 and 136 (NY Reg, Oct. 10, 2012 at 13, 14, 17), and all pending applications were then reviewed based on the criteria set forth in the amended part 136.
Under the new part 136, the DIU examines the applicant’s lifetime driving records (15 NYCRR 136.5 [b]) and, if the applicant has certain alcohol-related convictions on his or her driving record, he or she will be subject to sanctions specified in such section, as follows:
1. Five or more alcohol-related convictions or incidents, re-licensing is “permanently denied” (15 NYCRR 136.5 [b] [1]), or
2. Three or four alcohol or related convictions within the past 25 years and also has a serious driving offense (SDO),[2] he or she can be “permanently” denied a license (15 NYCRR 136.5 [b] [2]), or
3. Three or four alcohol or related convictions within the past 25 years, without an SDO, the applicant shall remain in revoked status for a period of five years, in addition to the statutory minimum revocation period (15 NYCRR 136.5 [b] [3]). After the five-year revocation, the applicant may be issued a class D permit or license with a problem driver restriction.
Thereafter, on February 22, 2013, DMV published a new “Notice of Emergency Adoption and Proposed Rulemaking” relating to parts 134 and 136 (NY Reg, Mar. 13, 2013 at 41, 43), which clarified that the offense that triggered the revocation was *191 included in determining whether the applicant had three or four offenses during the 25-year look back period (15 NYCRR 136.5 [a] [3]).
A person whose license had been “permanently” revoked can apply to DMV after the expiration of five or eight years, for a waiver, but the Commissioner may refuse to restore the license “in the interest of the public safety and welfare” (see Vehicle and Traffic Law § 1193 [2] [b] [12] [b] [ii]; [2] [b] [12] [e] [in]; 15 NYCRR 136.10 [b]).
The respondent explained that, prior to the adoption of the amendments of part 136, in 2012 and 2013, the DIU of the DMV would only review the applicant’s driving record for the 10 years preceding the application and, if the applicant had three or more alcohol-related incidents, an extended six-month waiting period would be added for each occurrence. However, the extended waiting period was not in addition to the statutory minimum revocation.
The DMV asserts that, on December 20, 2012, the petitioner filed an administrative appeal of the DIU’s determination, which was denied by the DMV Appeals Board on February 11, 2013. The DMV asserts that there is no indication that the respondent submitted a request for reconsideration of his application due to compelling and extenuating circumstances.
Arguments
The petitioner asserts that the revocation of his license creates a hardship, because his back injury requires him to attend doctors’ appointments and there is no public transportation to permit him to get to these appointments on his own. At present, the petitioner indicates that he is not even eligible to get a conditional license, which would permit him to drive to his medical appointments.
The petitioner also argues that the application of part 136 which was amended after he pleaded guilty to DWI results in an impermissible, unconstitutional, ex post facto penalty. It is argued that the petitioner had notice of the revocation period he was facing at the time he pleaded guilty to an alcohol-related driving offense, but was instead subjected to additional penalties which were not in existence at the time of his plea.
It is also argued that the DMV exceeded the authority granted to it, by section 215 (a) of the Vehicle and Traffic Law, which grants the Commissioner of Motor Vehicles authority to enact rules and regulations. The petitioner argues that section 1193 *192 of the Vehicle and Traffic Law provides specific sanctions when a person has been convicted of one or more alcohol-related offenses, and the circumstances under which a person may have a “permanent” revocation of their license, which circumstances were not present in the case at bar.
Even with a “permanent” revocation, the person may apply to receive their license back, but the Commissioner was empowered “on a case by case basis” to refuse to restore a license “in the interest of the public safety and welfare.”
Therefore, the petitioner argues that the new part 136 regulations are in direct contradiction with the Vehicle and Traffic Law which governs the license revocation for individuals with multiple offenses, and therefore, are outside the scope of the DMV’s authority to promulgate regulations. In addition, it is argued that the statute authorizes the DMV to withhold the return of licenses on a case by case basis, and that the new regulations remove that exercise of discretion from the Commissioner.
The fourth argument made by the petitioner is that the denial of a conditional or restricted license is not rationally related to a legitimate government purpose and, therefore, is unconstitutional. It is argued that permanent revocations prevent an individual from driving to and from work, or to the alcohol- and drug-related treatment they require to address their condition, and deny such persons the ability to become productive and responsible members of society.
Finally, the petitioner argues that the regulations should be deemed unconstitutionally vague, because they refer to “three or four” alcohol-related offenses, and do not give the petitioner notice of the activity he should be avoiding.
In opposition, the Attorney General’s Office argues, on behalf of the DMV that the causes of action challenging the substance of the regulations on constitutional grounds are untimely. It is argued that such causes of action accrued on the date the regulations became effective, and are subject to the four-month statute of limitations to challenge a governmental action (see CPLR 217).
The Attorney General’s Office further argues that the respondent properly performed the duties imposed upon it by law, the decisions were made in accordance with lawful procedure, were not affected by an error of law, and were neither arbitrary nor capricious nor an abuse of discretion.
*193 It is argued that sections 510 (6), 1193 (2) (c) and 1194 (2) (d) (1) of the Vehicle and Traffic Law authorize the DMV to establish criteria for re-licensing after revocation, and that the Commissioner may refuse to restore a license after the minimum statutory period of revocation, in the interest of public safety and welfare (Vehicle and Traffic Law § 1193 [2] [b] [12]). It is further argued that the legislature gave DMV broad authority to establish parameters for re-licensing after revocation for an alcohol- or drug-related offense, and that 15 NYCRR part 136 was promulgated pursuant to that authority.
It is also argued that the periods of revocation provided for by statute have been construed by the courts as imposing minimum periods of revocation, subject to the Commissioner’s discretion to grant an application for re-licensing.
The respondent points out that the part 136 regulations do not restrict the Commissioner’s authority to review each application on a “case by case basis” (Vehicle and Traffic Law § 1193 [12] [b]), since section 136.5 (d) permits the Commissioner to consider “unusual, extenuating and compelling circumstances” to deviate from the general policy in the exercise of discretionary authority granted under sections 501 and 1193 of the Vehicle and Traffic Law. It is pointed out by the respondent that the petitioner failed to take advantage of these provisions and did not request a review by the Commissioner of the denial of his application.
The Commissioner next argues that the regulations in question do not constitute an ex post facto penalty, where it merely permits an agency to consider the applicant’s past conduct to govern his or her future license status, particularly since the regulations were promulgated pursuant to existing statutory authority.
The respondent next argues that any complaint that the petitioner had about the respondent’s delay in considering his application to restore his driver’s license is moot, because the respondent failed to bring a mandamus proceeding to compel the determination. Furthermore, even if the court were to consider the petitioner’s objection with respect to the delay, it is argued that the Commissioner can only be compelled to perform a mandatory act, and the Commissioner is vested with discretion whether to restore an applicant’s driver’s license.
The Commissioner’s next argument refutes the petitioner’s claim that the regulations were not rationally related to a legitimate government purpose and are therefore unconstitutional, *194 by arguing that the regulations are designed to promote the important governmental interest in preventing recidivist alcohol impaired drivers from re-offending and causing crashes resulting in death or serious injury.
Finally, the respondent argues that the language of the regulation which provides that an application to be re-licensed may be denied where the applicant has “three or four” alcohol-related convictions during the look back period is not unconstitutionally vague. It is argued that the regulation clearly gives the requisite notice that a person with at least three drug- or alcohol-related convictions may be subject to an extended revocation period.
Conclusions of Law
The court shall first address the respondent’s claim that the petitioner’s challenge to the substance and constitutionality of the regulations at issue, by way of a CPLR article 78 proceeding, was untimely. The respondent argues that the claim, seeking to challenge the amendments to part 136, accrued on September 25, 2012, when the DMV filed a “Notice of Emergency Adoption and Proposed Rulemaking” and, therefore, the four-month statute of limitations expired in January of 2013, but that the instant proceeding was not commenced until May 29, 2013.
The petitioner asserts that the statute of limitations did not begin to run until the determination to be reviewed becomes “final and binding upon the petitioner” (CPLR 217 [1]), which did not occur until the petitioner exhausted his administrative remedies and received notice on February 11, 2013 that his appeal had been denied.
An article 78 proceeding must be commenced within four months after the determination to be reviewed becomes “final and binding upon the petitioner” (CPLR 217 [1]), which is not necessarily the effective date of the regulation (New York State Assn. of Counties v Axelrod, 78 NY2d 158 [1991]), but rather is when the challenged determination “inflicts an actual, concrete injury upon the petitioner” (Matter of Town of Olive v City of New York, 63 AD3d 1416, 1418 [3d Dept 2009] [internal quotation marks omitted]), or to put it another way, where it is clear that the petitioner seeking review has been aggrieved by it and has received notice of the challenged agency action (Berkshire Nursing Ctr., Inc. v Novello, 13 AD3d 327 [2d Dept 2004]). In addition to establishing the finality of the determination, it *195 must also be demonstrated that the petitioner has exhausted his or her administrative remedies (Walton v New York State Dept. of Correctional Servs., 8 NY3d 186 [2007]).
Accordingly, based on the foregoing, the court finds that the instant article 78 proceeding was timely commenced against the respondent, in that it was commenced within four months of the petitioner’s receipt of the respondent’s determination that his administrative appeal was denied.
The petitioner next argued that the promulgation of the amendments to 15 NYCRR part 136 was ultra vires, in that they are in contradiction with the provisions of the Vehicle and Traffic Law which govern the license revocation for individuals with multiple offenses. The petitioner also argued that the regulations remove the Commissioner’s discretion to decide on a case by case basis whether to restore a revoked license.
The respondent argues that the Commissioner has been granted broad discretion to establish parameters for re-licensing after a revocation for an alcohol- or drug-related alcohol offense. Section 215 (a) of the Vehicle and Traffic Law grants the Commissioner authority to enact rules and regulations, and section 1193 (2) (a) of the Vehicle and Traffic Law provides license sanctions for alcohol- and drug-related driving offenses, including a revocation of six months, where a person is convicted of certain specified provisions of section 1192 of the Vehicle and Traffic Law (see Vehicle and Traffic Law § 1193 [2] [b] [2]). Section 1193 (2) (c) (1) of the Vehicle and Traffic Law provides that “where a license is revoked pursuant to paragraph (b) of this subdivision, no new license shall be issued after the expiration of the minimum period specified in such paragraph, except in the discretion of the commissioner.” Vehicle and Traffic Law § 1193 (2) (b) (12) (b) provides, in a provision addressing “permanent revocations,” that “the commissioner may, on a case by case basis, refuse to restore a license which otherwise would be restored pursuant to this item, in the interest of the public safety and welfare.” Section 510 (5) of the Vehicle and Traffic Law also provides the Commissioner with the discretion to restore a driver’s license which has been revoked or suspended; and Vehicle and Traffic Law § 510 (6) provides the Commissioner with discretion to refuse to reissue a license after a mandatory minimum period of revocation.
Therefore, it is argued by the respondent that the promulgation of the regulations at issue are within the broad grant of discretion afforded to it by statute.
*196 In evaluating whether an administrative agency has exceeded the authority delegated to it, the Court of Appeals observed that
“[t]he cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation. Indeed, the difficulty and complexity of most of these policy determinations mandates that the legislative body be permitted to provide for the implementation of basic policy through the use of specialized agencies concentrating upon one particular problem at a time” (Matter of Nicholas v Kahn, 47 NY2d 24, 31 [1979] [citations omitted]).
In Matter of Hauptman v New York State Dept. of Motor Vehs. (158 AD2d 600 [2d Dept 1990]), the Second Department found that 15 NYCRR 136.5 (a) was not in conflict with the authorizing statute, but was instead in harmony with the express legislative intent to insure highway safety by keeping recidivist drunk drivers off the road (see also Matter of Quealy v Passidomo, 124 AD2d 955 [3d Dept 1986]).
Accordingly, this court finds, with deference to the special expertise of the DMY and the discretionary authority granted to the Commissioner by statute to refuse to reissue a license after a mandatory minimum period of revocation, that the respondent did not exceed its authority in issuing the amendments to part 136 of 15 NYCRR (see Cubas v Martinez, 8 NY3d 611 [2007]; Matter of Sullivan Fin. Group, Inc. v Wrynn, 94 AD3d 90 [3d Dept 2012]).
The petitioner also seeks to challenge the amendments to part 136 on the grounds that they are not rationally related to a legitimate government purpose. The petitioner argues that, because the regulations prevent individuals from being able to drive to work and to drug and alcohol treatment, they deny such individuals the ability to become productive and responsible members of society.
“The challenger of a regulation must establish that the regulation ‘is so lacking in reason for its promulgation that it is essentially arbitrary.’ The interpretation given a statute by the administering agency ‘if not irrational or unreasonable, should be upheld.’ ” (Ostrer v Schenck, 41 NY2d 782, 786 [1977] [citations omitted]). In Matter of Belmonte v Snashall (2 NY3d 560 *197 [2004]), the Court of Appeals indicated that the role of the Court is to determine whether the regulations at issue are rational and relate to the goals of the underlying statute.
This court finds that the petitioner has failed to meet his heavy burden of showing that the regulations lacked a rational basis and were “unreasonable, arbitrary or capricious” (Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 331 [1995]). The court finds that the regulations at issue are a permissible and reasonable exercise of the Commissioner’s broad statutory authority to promote highway safety and to prevent death and injuries caused by impaired or intoxicated drivers by subjecting applicants with multiple offenses to stricter scrutiny, upon an application to be re-licensed after a mandatory minimum period of revocation (see People v Roach, 226 AD2d 55 [4th Dept 1996]).
The court also finds that any complaint that the petitioner had with respect to the DMV’s delay in considering his application to be re-licensed, while it promulgated the regulations at issue, does not form a basis for the relief sought. The proper remedy for a claim based on delay in making an administrative determination is a proceeding in the nature of mandamus to compel, seeking an order requiring the agency to render a decision (Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88 [1981]). The court finds, however, that any due process claim is now moot, since once the sought-after determination has been rendered, the issue of a prompt administrative determination has been rendered academic by the adverse determination (Matter of Lally v Johnson City Cent. Sch. Dist., 105 AD3d 1129 [3d Dept 2013]; Matter of Bonez v State of New York, 100 AD3d 1235 [3d Dept 2012]; Demisay v Whalen, 59 AD2d 444 [3d Dept 1977]).
The petitioner has also argued that the regulations should be deemed unconstitutional, because they are too vague to give notice to a driver of the wrongful activity he or she should be avoiding. The petitioner points to the provisions of 15 NYCRR 136.5 (b) (2) and (3) which provide that an application for re-licensing will be denied if the person has three to four alcohol-related offenses. Due process requires that a civil statute contain “a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms” (Pringle v Wolfe, 88 NY2d 426, 435 [1996]). The court finds that the regulation is sufficiently precise to put drivers on notice that their application for re-licensing may be denied based *198 on three prior alcohol-related offenses (Matter of Hauptman v New York State Dept. of Motor Vehs., 158 AD2d 600 [1990]).
The single remaining issue in this proceeding is whether 15 NYCRR part 136 is unconstitutional as applied to petitioner in that it violates the Ex Post Facto Clause of article I, § 10 of the United States Constitution.
An essential element of the analysis of this issue is an understanding of the definition of an ex post facto law. In 1798 the United States Supreme Court in Calder v Bull (3 US 386 [1798]) defined an ex post facto law as one that criminalizes conduct that was innocent at the time it was committed; that aggravates a crime beyond its level when committed; or that increases the level of punishment beyond that which was available at the time the offense was committed.
In the case at bar, the petitioner was arrested for DWI on August 19, 2011, and pleaded guilty to the charge on September 2, 2011. An order of suspension or revocation was issued on September 6, 2011, which provided, pursuant to Vehicle and Traffic Law § 1193 (2), that the petitioner’s driver’s license was revoked for at least six months, effective September 6, 2011.
In February of 2012, the petitioner applied to have his license restored after the expiration of the minimum statutory period of expiration, which was due to expire on March 6, 2012, but the DMV held the petitioner’s application for restoration, pending the anticipated promulgation of amendments to 15 NYCRR part 136.
On September 25, 2012, the DMV filed a “Notice of Emergency Adoption and Proposed Rulemaking” regarding 15 NYCRR parts 3, 134 and 136, and proceeded to review the petitioner’s application for re-licensing under the newly promulgated standards set forth in 15 NYCRR 136.5 (a) (3) and (b) (3) (i), based upon a lifetime review of the petitioner’s driving record, which included three alcohol-related offenses in the past 25 years.
The respondent has acknowledged that, prior to amendments to part 136 in 2012 and 2013, the look back period would only have been for the past 10 years, and an extended six-month waiting period would only have been added if the applicant had three or more alcohol-related incidents.
The amendments to part 136 do not fall into the first two categories of the definition of an ex post facto law, by criminalizing conduct that was innocent at the time it was committed, or by *199 aggravating the crime beyond its level when committed. The issue in this case is whether the amendments created an ex post facto consequence by increasing the level of punishment beyond that which was available at the time the offense was committed.
It has been held that the prohibition against increasing the level of punishment applies only to statutes which are punitive in nature, as opposed to civil penalties which are not subject to the prohibition against ex post facto laws (Smith v Doe, 538 US 84, 92 [2003] [which held that the retroactive application of the Alaska Sex Offender Registration Act did not violate the Ex Post Facto Clause]). The issue of ex post facto legislation has been litigated extensively in the area of sex offender registry laws.
In New York, the Court of Appeals has consistently held that the Sex Offender Registration Act (SORA) (Correction Law art 6-C) “is not a penal statute and the registration requirement is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime” (People v Parilla, 109 AD3d 20, 23 [1st Dept 2013]; see also People v Windham, 10 NY3d 801, 802 [2008] [a SORA risk-level determination is a “collateral consequence of a conviction for a sex offense designed not to punish, but rather to protect the public”]).
Counsel for the DMV has asserted that the amendments were the result of the DMV concluding that it was necessary and appropriate to strengthen the criteria for re-licensing, in order to keep individuals with multiple alcohol-related offenses off the roads, for extended periods of time, or in some cases permanently.
In has been held that the “suspension or revocation of the privilege of operating a motor vehicle is essentially civil in nature, having as its aims chastening of the errant motorist, and, more importantly, the protection of the public from such a dangerous individual” (Matter of Barnes v Tofany, 27 NY2d 74, 78 [1970]; see also People v Gerstner, 168 Misc 2d 495 [Sup Ct, Monroe County 1996] [and cases cited therein, in which the court concludes that, although a license suspension pursuant to Vehicle and Traffic Law § 1193 (2) (e) (7) may have a deterrent effect, its primary aim and objective is the promotion of highway safety. As a result, its remedial purpose is not overborne to the extent that it should be categorized as punishment]).
Therefore, the court finds that the revocation provisions of the amendments to 15 NYCRR part 136 are civil penalties *200 which are not subject to the prohibition against ex post facto laws.
The Supreme Court further held in Smith v Doe (at 92), that even if “the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is ‘so punitive either in purpose or effect as to negate [the State’s] intention’ to deem it ‘civil.’ ”
The court must now consider, under this second prong of the test established in Smith v Doe (at 92), whether the amendments to 15 NYCRR part 136 are “so punitive either in purpose or effect as to negate [the State’s] intention to deem it ‘civil.’ ” The United States Supreme Court further held in Smith v Doe (id.) that “defer[ence is due] to [a] legislature’s stated intent,” and “only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty” (internal quotation marks omitted).
Therefore, this court also finds, in the case at bar as to the second prong of the test, that the provisions of the regulations are not so punitive in either purpose or effect so as to negate its civil purpose. While the right to travel without restriction among the states is one of the fundamental rights guaranteed to citizens under the United States Constitution (see Dunn v Blumstein, 405 US 330 [1972]), and a driver’s license is a substantial property interest that may not be deprived without due process of law (Pringle v Wolfe, 88 NY2d 426 [1996]), nonetheless, the state may regulate the right to drive and the possession of a driver’s license in the furtherance of highway safety and to protect against potential injury to the public (Reitz v Mealey, 314 US 33 [1941]). Therefore, provided that adequate procedures are in place so that a license may be issued or revoked with procedural due process safeguards, there is no violation of any “constitutional right.” (Bell v Burson, 402 US 535 [1971].)
The court notes that there is no proof in the record that the petitioner availed himself of the opportunity to request a review of his application, based upon evidence of “unusual, extenuating and compelling circumstances” in accordance with 15 NYCRR 136.5 (d).
Accordingly, the court finds that there is not sufficient proof to establish that suspension or revocation of the petitioner’s driving privilege is so punitive, as to have been transformed from a civil remedy into a criminal penalty.
*201 Wherefore, based on the foregoing, it is hereby ordered that the application of the petitioner, Thomas Gaebel, is denied in its entirety.

. A “problem driver” was defined as
“an applicant for a driver’s license or privilege who has had a series of convictions, incidents and/or accidents or has a medical or mental condition, which in the judgment of the commissioner or his or her designated agent, upon review of the applicant’s entire driving history, establishes that the person would be an unusual and immediate risk upon the highways.” (15 NYCRR 136.1 [b] [1].)

. An “SDO” is defined as “(i) a fatal accident; (ii) a driving-related Penal Law conviction; (iii) conviction of two or more violations for which five or more points are assessed on a violator’s driving record pursuant to [sjection 131.3 of this subchapter; or (iv) 20 or more points from any violations” (15 NYCRR 136.5 [a] [2]).