McCarthy, J.P.
 

 Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining the notice of proposed driver’s license suspension referral imposed under Tax Law article 8.
 

 The Division of Taxation issued petitioner a notice of proposed driver’s license suspension referral, indicating that her license would be suspended by the Department of Motor Vehicles (hereinafter DMV) in 60 days unless she resolved her outstanding tax liabilities (see Tax Law § 171-v). Her income tax liabilities were well in excess of the $10,000 statutory requirement for license suspension (see Tax Law § 171-v [1]). Petitioner requested and received a conference before the Bureau of Conciliation and Mediation Services (hereinafter BCMS) of the Department of Taxation and Finance (hereinafter DTF), but the suspension notice was sustained.
 

 Petitioner submitted an offer in compromise to make 48 monthly payments of $750, for a total of $36,000, to settle her outstanding tax liability, which had grown at that point to more than $430,000. According to the required financial information form, petitioner’s liabilities (including $3.1 million in federal tax liability) far exceeded her assets. Petitioner began making the $750 monthly payments while her offer in compromise was pending.
 

 The next month, petitioner filed an administrative challenge to the suspension notice. The Division moved for a summary determination, asserting that petitioner relied on the provision preventing suspension when a person has made satisfactory payment arrangements with respondent Commissioner of Taxation and Finance, but her offer in compromise had not yet been accepted. An Administrative Law Judge (hereinafter ALJ) granted the Division’s motion, finding that petitioner did not establish any statutory ground for challenging the suspension (see Tax Law § 171-v [5]). Respondent Tax Appeals Tribunal affirmed the ALJ’s determination. Petitioner commenced this CPLR article 78 proceeding seeking to annul the Tribunal’s determination (see Tax Law § 2016).
 

 Initially, to the extent that petitioner seeks to have this Court decide whether the Commissioner erred in rejecting her offer in compromise, that issue is not before the Court. The letter containing that denial was not in front of the ALJ, and the Tribunal appropriately held that it could not consider documents outside the record. Likewise, we will not consider documents—or determinations contained therein—that were not part of the administrative record or considered by the agency (see Matter of Lippman v Public Empl. Relations Bd., 296 AD2d 199, 203 [2002], lv denied 99 NY2d 503 [2002]). This proceeding challenging the Tribunal’s ruling on a license suspension notice is not the proper vehicle for petitioner to challenge the denial of her offer in compromise.
 

 The issue before us is the determination sustaining the notice to suspend petitioner’s license. Tax Law § 171-v was enacted to require DTF and DMV to “cooperate in a program to improve tax collection through the suspension of drivers’ licenses of taxpayers with past-due tax liabilities equal to or in excess of [$10,000]” (Tax Law § 171-v [1]). The statute requires notice to the taxpayer at least 60 days prior to inclusion in the suspension program, with the notice containing clear statements of the past-due tax liabilities, that the taxpayer may avoid suspension “by fully satisfying the past-due tax liabilities or by making payment arrangements satisfactory to the [C]om-missioner” and how that can be accomplished, and that the right to protest the suspension notice is limited to certain issues (Tax Law § 171-v [3] [b]). Pursuant to the statute, a taxpayer has no right to commence a proceeding or any other legal recourse against DTF or DMV regarding a suspension notice except on the grounds that (i) the notice was issued to the wrong person, (ii) the past-due liabilities have been satisfied, (iii) and (iv) the taxpayer’s wages are being garnished by DTF or through an income execution to satisfy either the liabilities at issue or arrears in child or spousal support, (v) the taxpayer’s license is a commercial driver’s license, or (vi) DTF incorrectly found that the taxpayer failed twice within the previous 12 months to comply with a payment arrangement with the Commissioner (see Tax Law § 171-v [5]).
 

 The Division issued a timely suspension notice, and petitioner did not assert that its contents failed to comply with the statute. Nor did petitioner raise any of the enumerated grounds set forth in Tax Law § 171-v (5), despite that subdivision plainly stating that those are the only grounds upon which a suspension or referral may be challenged. Thus, according to the plain language of the statute, the Tribunal was required to uphold the suspension notice.
 

 Petitioner contends that the statute and the Division’s implementation of it deprived her of due process because there was no consideration of her financial ability to make any arranged payments. Once a driver’s license is issued, the holder has obtained a property interest therein that the state may not take away without providing procedural due process (see Dixon v Love, 431 US 105, 112 [1977]; Bell v Burson, 402 US 535, 539 [1971]; Pringle v Wolfe, 88 NY2d 426, 431 [1996]; see also Matter of Daxor Corp. v State of N.Y. Dept. of Health, 90 NY2d 89, 98 [1997]). As a legislative enactment, Tax Law § 171-v enjoys a presumption of constitutionality, which petitioner had to rebut by demonstrating that the statute is invalid beyond a reasonable doubt (see LaValle v Hayden, 98 NY2d 155, 161 [2002]; Pringle v Wolfe, 88 NY2d at 431). To the extent that petitioner is making a facial challenge to Tax Law § 171-v, she has failed to establish that no set of circumstances exist under which the law would be valid (see Matter of Moran Towing Corp. v Urbach, 99 NY2d 443, 448 [2003]; Berry v New York State Dept. of Taxation & Fin., 2017 NY Slip Op 31345[U], *4 [Sup Ct, NY County 2017]).
 

 Petitioner contends that DTF’s application of the statute in this matter deprived her of due process. Specifically, she argues that the statute, as implemented, fails to take into account a taxpayer’s inability to pay, and due process is violated when a person is deprived of a right based on financial circumstances. Her argument is too broad. Petitioner relies on Bearden v Georgia (461 US 660 [1983]), where, in a different context, the Supreme Court of the United States concluded that a state may revoke probation for failure to pay a fine if “the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay” (id. at 672). However, “[o]nly if alternate measures are not adequate to meet the [s]tate’s interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his [or her] conditional freedom simply because, through no fault of his [or her] own, he [or she] cannot pay the fine,” which “would be contrary to the fundamental fairness required by the Fourteenth Amendment” (id. at 672-673). We disagree with petitioner’s argument that the present situation is analogous to that in Bearden. Deprivation of freedom is not directly comparable to deprivation of a driver’s license.
 

 Indeed, suspension of a driver’s license pursuant to Tax Law § 171-v does not entirely deprive a taxpayer of the ability to drive. Petitioner asserts that the statute and its implementation lead to deprivation of rights for those who cannot afford to pay their tax liabilities and could lead to hardships such as the inability to work. Specifically, she alleges that she needs her license to travel to medical appointments and get prescriptions. We agree with the Commissioner that this type of hardship has been ameliorated by the Legislature, which provided that any person whose driver’s license is suspended pursuant to Tax Law § 171-v may apply to DMV for a restricted use license and DMV may not deny a restricted license to such a person as long as he or she otherwise had a valid license (see Vehicle and Traffic Law §§ 510 [4-f] [5]; 530 [5-b]; see also Berry v New York State Dept. of Taxation & Fin., 2017 NY Slip Op 31345[U], *7 [2017]). A restricted use license permits the person to drive as necessary for employment, school and medical treatment for himself or herself and any member of the household (see Vehicle and Traffic Law § 530). Therefore, petitioner is entitled, upon application after the suspension of her license that she is presently challenging, to issuance of a restricted use license that would permit her to drive for medical treatment.
 

 Returning to petitioner’s argument, under the Due Process Clause, the process afforded must be “appropriate to the nature of the case,” and provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner, generally before the termination or suspension becomes effective (Bell v Burson, 402 US at 541-542 [internal quotation marks and citation omitted]). As required by Tax Law § 171-v, the Division’s notice to petitioner set forth the basis for the suspension, was issued 60 days prior to the proposed referral to DMV for suspension and informed her of ways to avoid suspension (resolving the tax debt, setting up a payment plan, notifying DTF of eligibility for an exemption or protesting the proposed suspension by filing a request for a conciliation conference with BCMS or filing a petition with the Division of Tax Appeals).
 

 Petitioner took advantage of the processes that were available. She requested and received a conference with BCMS, but was unsuccessful. She also filed a petition with the Division of Tax Appeals, which led to the ALJ’s determination and an appeal to the Tribunal, resulting in the determination that is at issue in this proceeding. The suspension notice was placed on hold until those administrative processes were completed (and apparently has been kept in abeyance while this legal proceeding has been pending). Petitioner does not challenge the actual administrative process that has been established to contest a notice of license suspension, but instead hinges her argument on the program for offers in compromise.
 

 Petitioner filed an offer in compromise, which would allow her to resolve her tax debt or “make payment arrangements satisfactory to the [C]ommissioner” so as to avoid license suspension (Tax Law § 171-v [4]; see Vehicle and Traffic Law § 510 [4-f] [2]). The Commissioner is statutorily authorized to compromise any taxes or liabilities upon proof that, among other things, the taxpayer is insolvent or would suffer undue economic hardship, although there are certain restrictions placed upon the Commissioner in that regard (see Tax Law § 171 [15]; see also 20 NYCRR 5005.1). As noted above, DTF’s denial of petitioner’s offer in compromise is not before us, as it was not properly before the ALJ or the Tribunal.
 

 Petitioner argues that she was deprived of due process because, although the law provides an avenue to avoid suspension by making payment arrangements satisfactory to the Commissioner, DTF failed to review or consider her offer in compromise before the suspension was proposed to take effect. Nothing in the law requires DTF to act on such an offer within a specific time frame, and the Commissioner has broad discretion in deciding whether to accept an offer in compromise (see 20 NYCRR 5005.1 [d], [e] [2], [3]). While it would be improper for DTF to purposefully delay or withhold review of an offer in compromise until after the taxpayer’s license was suspended (for example, in an effort to gain leverage in negotiating a compromise), it would likewise be improper for courts to impose a time frame upon DTF for it to consider such offers where the relevant statute and regulation do not contain any time requirements. Any time frame imposed by a court might not be administratively feasible and would intrude on the Commissioner’s authority. Additionally, requiring an answer from DTF regarding an offer in compromise before permitting license suspension could lead to gamesmanship by taxpayers and the filing of offers shortly before the suspension deadline merely for purposes of delay. Hence, a taxpayer is not deprived of due process simply because DTF has not reached a determination on the taxpayer’s offer in compromise before a license suspension takes effect. Considering the processes afforded to petitioner before her license suspension would become effective, we decline to disturb the Tribunal’s determination.
 

 Rose, Devine, Mulvey and Rumsey, JJ., concur.
 

 Adjudged that the determination is confirmed, without costs, and petition dismissed.