[991 NYS2d 701]

In the Matter of the PHYLLIS J. ALLEN, Petitioner, v NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES et al., Respondents.

Supreme Court, Albany County, May 21, 2014

**APPEARANCES OF COUNSEL**

*Eric T. Schneiderman, Attorney General*, Albany (*Charles J. Quackenbush* of counsel), for respondents.

*Gerstenzang, O'Hern, Sills & Gerstenzang*, Albany (*Eric H. Sills* of counsel), for petitioner.

**OPINION OF THE COURT**

GEORGE B. CERESIA, JR., J.

The petitioner has been convicted of the following alcohol-related driving offenses: a conviction for driving while ability impaired dated August 24, 1989 and two convictions for driving while intoxicated (DWI) dated November 10, 2009 and March 15, 2011 respectively. By order issued August 3, 2011, the petitioner received a one-year license revocation arising out of the DWI conviction dated March 15, 2011.

In April 2012 the petitioner submitted an application for approval to obtain a new driver's license. In a determination dated December 6, 2012, the New York State Department of Motor Vehicles (DMV) advised the petitioner that her application was denied on grounds that she was a persistently dangerous driver. The petitioner appealed the determination, which was denied by DMV's Administrative Appeals Board on February 26, 2013. Both determinations rely heavily upon new regulations promulgated by DMV with regard to relicensing of individuals who have multiple alcohol- or drug-related driving convictions. Effective September 25, 2012, the respondent revised portions of part 136 of its regulations (*see* 15 NYCRR part 136). The revi-

sions impose significantly greater restrictions on the ability of persons convicted of multiple alcohol- or drug-related driving offenses to regain an operator's license after it has been revoked.

The petitioner commenced the above-captioned combined action/proceeding to annul the determination denying her application, and for a judgment declaring that portions of part 136 are unconstitutional. Among the many arguments advanced by the petitioner, she maintains that the regulations conflict with the provisions of Vehicle and Traffic Law §§ 510, 1193, and 1198 (among others). She asserts that they violate the separation of powers doctrine; and that the underlying enabling legislation is unconstitutional, as an overly broad delegation of legislative authority and, in the alternative, that the Commissioner exceeded her authority as delegated by the state legislature. The petitioner also alleges that the new regulations violate her right to due process; that they constitute an illegal ex post facto law; that they are arbitrary and capricious; and that respondent's delay in processing petitioner's application was illegal and improper. The respondents maintain that the contested provisions of part 136 do not conflict with the Vehicle and Traffic Law; that they were adopted pursuant to, and wholly within the respondents' delegated authority; and that they do not exceed the respondents' broad discretion. The respondents contend that their actions did not violate petitioner's constitutional rights; and that the delay in processing petitioner's application until December 6, 2012 was within respondents' discretion.

The determination dated December 6, 2012 of the Driver Improvement Examiner, which denied petitioner's application for a new operator's license, recites as follows:

> "Pursuant to the authority in Sections 136.5 (a) (3) and 136.5 (b) (3) (i) of the regulations of the Commissioner of Motor Vehicles, your application for a New York State driver license/privilege is hereby **DENIED** because you are deemed a persistently dangerous driver.
>
> "Section 136.5 (a) (3) provides as follows:
>
> "Special rules for applicants with multiple alcohol-or drug-related convictions or incidents.
>
> "For the purposes of this section 'revocable offense' means the violation, incident or accident that results in the revocation of the person's drivers license and which is the basis of the application for relicensing.

Upon reviewing an application for relicensing, the Commissioner shall review the applicant's entire driving record and evaluate any offense committed between the date of the revocable offense and the date of application as if it had been committed immediately prior to the date of the revocable offense. For purposes of this section, 'date of the revocable offense' means the date of the earliest revocable offense that resulted in a license revocation for which the revocation has not been terminated by the Commissioner's subsequent approval of an application for relicensing.

"Section 136.5 (b) (3) (i) provides as follows:

"Upon receipt of a person's application for relicensing, the Commissioner shall conduct a lifetime review of such person's driving record. If the record review shows that:

"the person has three or four alcohol- or drug-related driving convictions or incidents in any combination within the 25 years preceding the date of the revocable offense but no serious driving offenses within the 25 years preceding the date of the revocable offense and (ii) the person is currently revoked for an alcohol- or drug-related driving conviction or incident, then the Commissioner shall deny the application for at least five years, after which time the person may submit an application for relicensing. After such waiting period, the Commissioner may in his or her discretion approve such application, provided that upon such approval, the Commissioner shall impose the A2 restriction on such person's license for a period of five years and shall require the installation of an ignition interlock device in any motor vehicle owned or operated by such person for such five year period. If such license with an A2 restriction is later revoked for a subsequent alcohol-or drug-related driving conviction or incident, such person shall thereafter be ineligible for any kind of license to operate a motor vehicle.

"The following constitute grounds for such denial:

"Violation
"Date Incidents/Convictions/Accidents
"10/16/2010 DWI
"10/23/2009 DWI

"05/25/2000 No seat belt
"03/10/1990 Speeding 72/55
"08/07/1989 Driving while ability impaired
"03/02/1985 Failed to keep right
"10/01/1999 Property damage accident
"06/22/1999 Property damage accident
"04/18/1992 Personal injury/property damage accident
"11/15/1988 Personal injury/property damage accident

"Your driving history suggests that your failure to observe the rules and regulations governing the operation of a motor vehicle constitutes a serious lack of regard on your part for the safety and welfare of other users of the highway, and forms the basis of our decision to deny your application for a driver license.

"Although you may submit an application for a new driver license on or after five years from 05/04/2012, please be aware that a review of any subsequent application will be of the entire driving history at that time. Each application is subject to the statutory $100 fee.

"If you feel your case involves unusual, extenuating or compelling circumstances, you may send the information to the Driver Improvement Bureau at the above address. Any such information must be sent within 30 days of the date of this letter. The information concerning your circumstances will be reviewed and you will be advised of the result. Otherwise, this denial is considered final.

"If you do not have any unusual, extenuating or compelling circumstances but wish to appeal this decision, you may file an appeal with the Appeals Board[ ]."

The petitioner submitted an appeal to the respondent on January 14, 2013. The appeal was decided on February 26, 2013. The appeals decision recites, in part, as follows:

"Appellant's argument that Section 136.5 of the Commissioner's Regulation is inapplicable to appellant is without merit. To conclude that the conviction or incident that formed the basis for appellant's revocation is not to be considered in reviewing appellant's driving record is contrary to fundamental rules of construction and to the statutory intent and purpose of the regulation.

"Under the Governor's direction, the Commissioner's Regulations were reassessed to address the inherent danger of relicensing drivers convicted of multiple alcohol and drug-related offenses. The Regulations were developed in an effort to address the problems caused by drivers with a history of alcohol and/or drug related offenses in order to protect all those who share the public highways of this State. The Regulations were implemented as soon as they were enacted on September 25, 2012.

"Reg. Section 136.5 (b) (3) provides that upon receipt of a person's application for relicensing, the Commissioner shall conduct a lifetime review of such person's driving record. The Commissioner shall deny the application for at least five years if the review shows that (i) the person has three or four alcohol-or drug-related driving convictions or incidents in any combination within the 25 years preceding the date of the revocable offense but no serious driving offenses within the 25 years preceding the date of the revocable offense, and (ii) the person is currently revoked for an alcohol- or drug-related driving conviction or incident.

"A 'revocable offense' is defined by Reg. Section 136.5 (a) (3) as: a violation, incident or accident that results in the revocation of a person's driver's license and which is the basis of the application for relicensing. Upon reviewing an application for relicensing, the Commissioner shall review the applicant's entire driving record and evaluate any offense committed between the date of the revocable offense and the date of the application as if it had been committed immediately prior to the date of the revocable offense.

"A 'serious driving offense' is defined by Reg. section 136.5 (a) (2) as: (i) a fatal accident; (ii) a driving-related Penal Law conviction; (iii) conviction of two or more violations for which five or more points are assessed on a violator's driving record pursuant to Reg. Section 131.3; or (iv) 20 or more points from any violations.

"Department records indicate that appellant's driving record includes three alcohol or drug-related incidents or convictions. Moreover, appellant's license is currently revoked for an alcohol or drug-

related driving incident or conviction.

"Given appellant's driving record, there was no abuse of discretion in this case. The Regulations are consistent with the Commissioner's statutory responsibilities and were properly and fairly applied. The denial of appellant's application for a driver's license had a rational basis and shall not be disturbed.

"Decision By The Board: Affirm the denial."

To briefly summarize, part 136 establishes the review criteria which the Commissioner must consider in determining whether the license of someone having multiple alcohol- and drug-related convictions will be restored after revocation. As revised in September 2012, part 136 provides that upon receipt of an application for relicensing, the Commissioner must undertake a lifetime review of the person's driving history, focusing primarily on a 25-year look-back period. In two circumstances, it provides for what is essentially a lifetime denial of a new license: (1) where the applicant has five or more alcohol- or drug-related convictions or incidents in his or her lifetime,[1] and (2) where the applicant has three or four such convictions or incidents within a 25-year period, and a serious driving offense (see 15 NYCRR 136.5 [b] [1], [2]).[2] As particularly relevant here, it further provides that if a person has three or four alcohol- or drug-

---

1. Section 136.5 (a) recites:
 "(a) For the purposes of this section:
 "(1) Alcohol- or drug-related driving conviction or incident means any of the following, not arising out of the same incident:
 "(i) a conviction of a violation of section 1192 of the Vehicle and Traffic Law or an out-of-state conviction for operating a motor vehicle while under the influence of alcohol or drugs;
 "(ii) a finding of a violation of section 1192-a of the Vehicle and Traffic Law; provided, however, that no such finding shall be considered after the expiration of the retention period contained in paragraph (k) of subdivision 1 of section 201 of the Vehicle and Traffic Law;
 "(iii) a conviction of an offense under the Penal Law for which a violation of section 1192 of the Vehicle and Traffic Law is an essential element; or
 "(iv) a finding of refusal to submit to a chemical test under section 1194 of the Vehicle and Traffic Law." (Emphasis omitted.)

2. A serious driving offense is defined as "(i) a fatal accident; (ii) a driving-related Penal Law conviction; (iii) conviction of two or more violations for which five or more points are assessed on a violator's driving record pursuant to Section 131.3 of this subchapter; or (iv) 20 or more points from any violations." (See 15 NYCRR 136.5 [a] [2].)

related driving convictions or incidents within 25 years, "then the Commissioner shall deny the application for at least five years" (15 NYCRR 136.5 [b] [3]). After this five-year waiting period has expired, and if the Commissioner approves the relicensing application, the applicant will not receive a full license. Rather, the applicant will be issued a license with an "A2 restriction"[3] for a period of five years, and will be required to install an ignition interlock device (IID) on any motor vehicle he/she owns or operates (*see* 15 NYCRR 136.5 [b] [3] [ii]).

## Conflicts with the Vehicle and Traffic Law and Other Laws

The court will examine the major arguments advanced by the petitioner with regard to alleged conflicts between the Vehicle and Traffic Law and part 136. Most of these arguments have not been shown to have any application to the matter before the court. However, the court is of the view that they should be reviewed, as they are supportive of petitioner's broad-based challenge to part 136, predicated upon petitioner's argument that portions of part 136 are incompatible with the provisions of the Vehicle and Traffic Law (and other laws), and that the Commissioner has exceeded her authority.

## Conflict with the Provisions of Vehicle and Traffic Law § 1193 (2) (b) (12)

As relevant here, albeit in simplified terms, Vehicle and Traffic Law § 1193 (2) (b) (12) (a) provides that a driver's license must be permanently revoked where the driver incurs three alcohol- and/or drug-related offenses (including chemical test refusals) within a four-year period; or four alcohol- and/or drug-related offenses (including chemical test refusals) within an eight-year period. Although the revocation is denominated to be "permanent," the statute contains a further provision which recites that "the permanent driver's license revocation required by clause (a) of this subparagraph *shall be waived* by the com-

---

**3.** See 15 NYCRR 3.2 (c) (4), which recites:

"A2-Problem driver restriction. The operation of a motor vehicle shall be subject to the driving restrictions set forth in section 135.9 (b) and the conditions set forth in section 136.4 (b) of this Title. As part of this restriction, the commissioner may require a person assigned the problem driver restriction to install an ignition interlock device in any motor vehicle that may be operated with a Class D license or permit and that is owned or operated by such person. The ignition interlock requirement will be noted on an attachment to the driver's license or permit held by such person. Such attachment must be carried at all times with the driver license or permit."

missioner after a period of five years has expired" (Vehicle and Traffic Law § 1193 [2] [b] [12] [b] [emphasis supplied]).[4] In a similar fashion, Vehicle and Traffic Law § 1193 (2) (b) (12) (d), again in simplified terms, imposes a permanent license revocation in connection with a fourth conviction for an alcohol- or drug-related offense (including test refusal), after having received three such convictions within a four-year period; or where the individual has received five such convictions within an eight-year period. Clause (e) thereof recites that the permanent revocation *may* be waived by the commissioner after the expiration of eight years.

By way of contrast, section 136.5 (b) (3) imposes an additional five-year license revocation period on top of the five- (or eight-) year statutory revocation period imposed under Vehicle and Traffic Law § 1193 (2) (b) (12) (b) and (e). Moreover, in certain instances (where the person has three or four alcohol- or drug-related driving convictions within a 25-year look-back period), a five-year relicensing waiting period is imposed even where the individual's license was not permanently revoked under the provisions of Vehicle and Traffic Law § 1193 (2) (b) (12) (*see* 15 NYCRR 136.5 [b] [3] [i]).

The petitioner maintains that by virtue of the language employed in Vehicle and Traffic Law § 1193 (2) (b) (12) (b) and (e), the legislature has established a strong policy favoring unconditional restoration of a driver's license after expiration of either the five-year or eight-year statutory period; and that section 136.5 in adding a five-year minimum waiting period violates the foregoing legislative policy, particularly (and all the more so) with respect to persons whose license has not been permanently revoked under Vehicle and Traffic Law § 1193 (2) (b) (12). The petitioner argues, inter alia, that part 136 operates to render the provisions of Vehicle and Traffic Law § 1193 (2) (b) (12) (b) and (e) of no effect by reason that it: requires the Commissioner to undertake a lifetime review of a person's driving record; implements (in most cases) a 25-year look-back period; in some instances imposes a lifetime prohibition against restoration of a driver's license; and imposes an additional five-year waiting period, followed by a five-year period with a restricted license, coupled with a requirement for installation of an ignition interlock device.

---

4. The foregoing, however, is qualified by the following language: "[p]rovided, however, that the commissioner may, on a case by case basis, refuse to restore a license which otherwise would be restored pursuant to this item, in the interest of the public safety and welfare" (*id.*).

Section 136.5 of respondents' regulations recites, in part, as follows:

"(b) Upon receipt of a person's application for re-licensing, the Commissioner shall conduct a lifetime review of such person's driving record. If the record review shows that:

"(1) the person has five or more alcohol- or drug-related driving convictions or incidents in any combination within his or her lifetime, then the Commissioner shall deny the application.

"(2) the person has three or four alcohol- or drug-related driving convictions or incidents in any combination within the 25 year look back period and, in addition, has one or more serious driving offenses within the 25 year look back period, then the Commissioner shall deny the application.

"(3)

"(i) the person has three or four alcohol- or drug-related driving convictions or incidents in any combination within the 25 year look back period but no serious driving offenses within the 25 year look back period; and

"(ii) the person is currently revoked for an alcohol- or drug-related driving conviction or incident, then the Commissioner shall deny the application for at least five years after which time the person may submit an application for relicensing. Such waiting period shall be in addition to the revocation period imposed pursuant to the Vehicle and Traffic Law. After such waiting period, the Commissioner may in his or her discretion approve the application, provided that upon such approval, the Commissioner shall impose the A2 restriction on such person's license for a period of five years and shall require the installation of an ignition interlock device in any motor vehicle owned or operated by such person for such five-year period. If such license with an A2 restriction is later revoked for a subsequent alcohol- or drug-related driving conviction or incident, such person shall thereafter be ineligible for any kind of license to operate a motor vehicle.

"(4)

"(i) the person has three or four alcohol- or drug-related driving convictions or incidents in any

combination within the 25 year look back period but no serious driving offenses within the 25 year look back period; and

"(ii) the person is not currently revoked as the result of an alcohol- or drug-related driving conviction or incident, then the Commissioner shall deny the application for at least two years, after which time the person may submit an application for relicensing. Such waiting period shall be in addition to the revocation period imposed pursuant to the Vehicle and Traffic Law. After such waiting period, the Commissioner may in his or her discretion approve the application, provided that upon such approval, the Commissioner shall impose an A2 restriction, with no ignition interlock requirement, for a period of two years. If such license with an A2 restriction is later revoked for a subsequent alcohol- or drug-related driving conviction or incident, such person shall thereafter be ineligible for any kind of license to operate a motor vehicle.

"(5) the person has two alcohol- or drug-related driving convictions or incidents in any combination within the 25 year look back period, then the Commissioner may in his or her discretion approve the application after the minimum statutory revocation period is served.

"(6) the person has been twice convicted of a violation of subdivision three, four or four-a of section 1192 of the Vehicle and Traffic Law or of driving while intoxicated or of driving while ability is impaired by the use of a drug or of driving while ability is impaired by the combined influence of drugs or of alcohol and any drug or drugs where physical injury, as defined in section 10.00 of the Penal Law, has resulted from such offense in each instance, then the Commissioner shall deny the application.

"(c) The grounds for any denial shall be set forth in writing and a copy shall be made available to the person making the application for relicensing.

"(d) While it is the Commissioner's general policy to act on applications in accordance with this section, the Commissioner shall not be foreclosed from consideration of unusual, extenuating and compelling circumstances that may be presented for review

and which may form a valid basis to deviate from the general policy, as set forth above, in the exercise of discretionary authority granted under sections 510 and 1193 of the Vehicle and Traffic Law. If an application is approved based upon the exercise of such discretionary authority, the reasons for approval shall be set forth in writing and recorded."

The court observes that the respondents have interposed an objection in point of law alleging that the petition fails to state a cause of action. The respondents further point out that the petitioner's license was not permanently revoked under Vehicle and Traffic Law § 1193 (2) (b) (12). In fact, it appears that petitioner's license was revoked for a period of one year on April 9, 2008.[5] Under this circumstance, the reissuance of petitioner's license would be governed by Vehicle and Traffic Law § 1193 (2) (c), which recites: "(c) Reissuance of licenses; restrictions. (1) Except as otherwise provided in this paragraph, where a license is revoked pursuant to paragraph (b) of this subdivision, no new license shall be issued after the expiration of the minimum period specified in such paragraph, except in the discretion of the commissioner." (Vehicle and Traffic Law § 1193 [2] [c] [1].) Thus, on the facts before the court, Vehicle and Traffic Law § 1193 (2) (b) (12) has not been shown to have any direct application to this petitioner, and any direct challenge to part 136 on this basis presents, at most, a theoretical or hypothetical controversy, which is not justiciable, and which fails to state a cause of action (*see* CPLR 3001; *Ovitz v Bloomberg L.P.*, 18 NY3d 753, 760 [2012]; *Matter of Schulz v New York State Legislature*, 230 AD2d 578, 582 [3d Dept 1997]).

The court nonetheless recognizes, as set forth above, that the petitioner has advanced a diffuse argument that the penalties, conditions and restrictions imposed under the recently revised part 136 are more onerous than those imposed by the legislature under the provisions of Vehicle and Traffic Law § 1193 (2) (b) (12), applicable to offenders having driving records, in her view, more egregious than hers. It is argued that by reason of the foregoing, part 136 conflicts with the overall legislative policy.

Looking first at respondents' statutory authority to adopt and revise part 136, Vehicle and Traffic Law § 215 (a) recites:

"Subject to and in conformity with the provisions of the vehicle and traffic law and the constitution and

---

**5.** Which likely was pursuant to Vehicle and Traffic Law § 1193 (2) (b) (3).

laws of the state, the commissioner may enact, amend and repeal rules and regulations which shall regulate and control the exercise of the powers of the department and the performance of the duties of officers, agents and other employees thereof."

In addition, the legislature has conferred broad powers upon the Commissioner with regard to licensing and revocation, including license restoration (*see* Vehicle and Traffic Law § 510). The petitioner points out that the provisions of Vehicle and Traffic Law § 510 are not applicable to alcohol- and drug-related license revocations (*see* Vehicle and Traffic Law § 510 [3] [a]; [6] [h]).[6] While this is true, the legislature expressly conferred broad discretionary authority over the reissuance of licenses where they have been revoked by reason of alcohol- or drug-related revocations (or test refusals) (*see* Vehicle and Traffic Law § 1193 [2] [b] [12] [b], [e]; 1193 [2] [c]).

■ The court discerns no conflict between Vehicle and Traffic Law § 1193 (2) (b) (12) (b) and part 136 for three reasons. First, while Vehicle and Traffic Law § 1193 (2) (b) (12) (b) recites that the Commissioner "shall" waive a permanent license revocation after five years, it further recites that such waiver is subject to a case by case review by the Commissioner in the interest of public safety and welfare. Vehicle and Traffic Law § 1193 (2) (b) (12) (b) does not preclude an additional nonpermanent time of revocation, nor does it preclude consideration of additional risk factors by the Commissioner. Thus, the grant of the waiver is not mandated, so long as the Commissioner exercises her discretion. Moreover, the issuance of a determination that the license application is denied for five years (after which time the applicant may reapply), while clearly postponing immediate consideration of the application, serves as formal recognition on the part of the Commissioner that the revocation is no longer permanent. Second, as noted, the Commissioner has been delegated broad authority to adopt rules and regulations to carry out her responsibilities (*see* Vehicle and Traffic Law § 215 [a]), and to oversee relicensing where a driver's license is revoked (*see* Vehicle and Traffic Law § 1193 [2] [b] [12] [b] [ii]; [e] [iii]; 1193 [2] [c]). Third, the revocation periods set forth in

---

**6.** Vehicle and Traffic Law § 510 (3) (a) authorizes the Commissioner to revoke or suspend a driver's license for any violation "of the provisions of this chapter, except section eleven hundred ninety-two." Vehicle and Traffic Law § 510 (6) (h) recites: "The provisions of this subdivision shall not apply to revocations issued pursuant to sections eleven hundred ninety-three and eleven hundred ninety-four of this chapter."

Vehicle and Traffic Law § 1193 (2) (b) are expressly described as "minimum periods." This carries with it the implication that revocation periods greater than the minimum may properly be imposed or extended by the Commissioner, as circumstances warrant.

With regard to the eight-year "permanent" revocation period under Vehicle and Traffic Law § 1193 (2) (b) (12) (d), as stated in clause (e): "[n]otwithstanding the provisions of this clause, nothing contained in this clause shall be deemed to require the commissioner to restore a license to an applicant who otherwise has complied with the requirements of this item, in the interest of public safety and welfare." On its face, there does not appear to be any stated legislative preference favoring issuance of a new license in connection with license revocations under Vehicle and Traffic Law § 1193 (2) (b) (12) (d).

Moreover, and apart from the foregoing, Vehicle and Traffic Law § 1193 (2) (b) (12) (c) recites as follows:

> "For revocations imposed pursuant to clause (a) of this subparagraph, the commissioner may adopt rules to permit conditional or restricted operation of a motor vehicle by any such person after a mandatory revocation period of not less than three years *subject to such criteria, terms and conditions as established by the commissioner.*" (Emphasis supplied.)

This, in the court's view, is precisely what the Commissioner did through the revisions to part 136, which delay issuance of a conditional or restricted license. The five-year waiting period under rule 136.5 (b) (3) has not been shown to conflict with the provisions of Vehicle and Traffic Law § 1193 (2) (b) (12) (b) or (e), or other provisions of the Vehicle and Traffic Law.

Based upon all of the foregoing, the court finds that there exists no statutory or legislative policy which requires the Commissioner to abandon the reasonable exercise of her delegated discretion in such matters in favor of reissuance of a previously revoked driver's license as a ministerial act.

Five-Year Ignition Interlock

The petitioner maintains that the requirement for installation of an IID, in connection with issuance of an A2 restricted license under rule 136.5 (b) (3) (i) violates several statutory provisions. Because, however, the petitioner was not issued an A2 restricted license, for the same reasons mentioned in the court's discussion of Vehicle and Traffic Law § 1193 (2) (b) (12) the

court is of the view that this claim fails to state a cause of action, as there is no justiciable controversy.

█ Even if the court were to determine that the matter was justiciable, the court would find that the argument has no merit. 15 NYCRR 3.2 (c) (4); 136.4 (b) (2) and 136.5 (b) (3) authorize the Commissioner to impose an A2 "Problem driver restriction" on certain licenses for a period of five years. The restriction may include a requirement that the driver install an IID on all vehicles owned or operated by the driver. The petitioner contends that the IID requirement conflicts with Penal Law § 65.10 (2) (k-1) and Vehicle and Traffic Law § 1198. These sections either authorize a court (Penal Law § 65.10 [2] [k-1]) or direct a court (Vehicle and Traffic Law § 1198 [2]), when imposing a sentence of probation or conditional discharge in connection with an alcohol-related offense, to require installation of an IID on any vehicle owned or operated by the defendant. In *People v Levy* (91 AD3d 793 [2d Dept 2012]), cited by the petitioner, the Court held that although Penal Law § 65.10 (2) (k-1) authorizes, as a condition of sentencing, installation of an IID in connection with violations of alcohol-related offenses (Vehicle and Traffic Law § 1192 [2], [2-a], [3]), it did not expressly authorize such a condition for a violation of Vehicle and Traffic Law § 1192 (4) (driving while ability impaired by drugs). *People v Letterlough* (86 NY2d 259, 261 [1995]) involved a sentence imposed for the crime of driving while intoxicated, which included as a condition of probation, that the defendant affix to his license plate a fluorescent sign stating "Convicted DWI." The Court found that such a sentence was not expressly authorized by the legislature, drawing an analogy to Penal Law § 65.10, which had recently been amended to include the imposition of IID as a condition of a sentence including probation or conditional discharge (*id*. at 268-269).

The respondents point out that Vehicle and Traffic Law § 501 (2) (c) recites as follows:

> "(c) Restrictions. Notwithstanding the foregoing provisions of this subdivision, the operation of vehicles may be limited by a restriction or restrictions placed on a license. The following restrictions may be issued by the commissioner based upon the representative vehicle in which the road test was taken, or if the license is issued based on driving experience, the vehicle in which the experience was gained. *In addition, the commissioner may by*

*regulation provide for additional restrictions based upon other types of vehicles or other factors deemed appropriate by the commissioner.*" (Emphasis supplied.)

As noted above, where a license is revoked pursuant to the provisions of Vehicle and Traffic Law § 1193 (2) (b), "no new license shall be issued after the expiration of the minimum period specified in such paragraph, except in the discretion of the commissioner" (Vehicle and Traffic Law § 1193 [2] [c] [1]).

The Appellate Division recently observed:

"[W]hen a person is convicted of driving while intoxicated under Vehicle and Traffic Law § 1192 (2), 'the court may sentence such person to a period of imprisonment . . . and *shall* sentence such person to a period of probation or conditional discharge in accordance with [Penal Law § 65.00] *and shall order the installation and maintenance of a functioning ignition interlock device*' (Penal Law § 60.21)." (*People v Barkley*, 113 AD3d 1002, 1002 [3d Dept 2014] [additional emphasis supplied].)

If anything, the "legislative policy" may be viewed to uniformly require installation of an IID after conviction of most alcohol-related offenses (*see* Penal Law § 60.21). The administrative imposition of an IID requirement in connection with issuance of a conditional or restrictive license is merely a rational extension of the foregoing policy. Under such circumstances, the court finds that the legislature conferred sufficient authority upon the respondent, in her discretion, to adopt the IID provisions set forth in part 136. They do not conflict with the provisions of Penal Law § 65.10, Vehicle and Traffic Law § 1193 or § 1198.

One further point should be made. The petitioner asserts that the IID requirement is improper and illegal by reason that the cost of the IID is deemed a fine under Vehicle and Traffic Law § 1198. She contends that the respondent has no authority to impose or collect an illegal fine (citing *Matter of Redfield v Melton*, 57 AD2d 491 [3d Dept 1977]). Two matters need to be addressed. First, part 136 does not, in any respect, mention the cost of an IID. Nor does it attempt to impose or collect a fine, fee, cost or assessment. Secondly, while the petitioner is correct, in that Vehicle and Traffic Law § 1198 recites that the cost of installation and maintaining an IID "shall be considered a fine for the purposes of subdivision five of section 420.10 of the criminal procedure law" (*see* Vehicle and Traffic Law § 1198 [5]), said section also recites that it is only applicable to a person

"required or otherwise ordered *by a court*" to install an IID (*id.* § 1198 [1] [emphasis supplied]). Thus, Vehicle and Traffic Law § 1198 has no application to IIDs mandated under section 136.5 (b) (3).

Twenty-Five Year Look-Back Period and Lifetime Review of Driving Record

Section 136.5 of the Department of Motor Vehicles Regulations (15 NYCRR) provides that where a person submits an application for relicensing, the Commissioner will conduct a lifetime review of the person's driving record (*see* 15 NYCRR 136.5 [b]). Part 136 provides for what is essentially a lifetime denial of a new license: (1) where the applicant has five or more alcohol- or drug-related convictions or incidents in his or her lifetime; or (2) where the applicant has three or four such convictions or incidents within a 25-year period, and in addition has a serious driving offense (*see* 15 NYCRR 136.5 [b] [1], [2]). If the person has three or four such convictions or incidents within a 25-year period, but no serious driver offenses, then the Commissioner must deny the application for at least five years, after which the person may submit another application for relicensing (*see id.* 136.5 [b] [3]). After the initial five-year waiting period expires, the Commissioner may approve a relicensing application, but must impose an A2 "problem driver" restriction for a period of five years and require installation of an IID on vehicles owned or operated by the licensee (*see id.*).

The petitioner maintains that the lifetime review and 25-year look-back period conflict with numerous provisions of the Vehicle and Traffic Law, which only impose a 10-year look-back period (or less). Among those cited are the following: Vehicle and Traffic Law §§ 1193 (1) (a), (c) (i), (ii); (1) (d) (2), (4) (i), (ii); (2) (b) (12) (a), (d); 1194 (2) (d) (1); 1198 (3) (a); Penal Law §§ 120.04 (3); 120.04-a (3); 125.13 (3); 125.14 (3).

The mere fact that the legislature, in limited circumstances and unrelated contexts, has imposed its own look-back period does not prohibit the respondent from administratively imposing a different one for other purposes. In order to determine if there is a conflict, the individual statutes must be examined. In this instance, the petitioner has not demonstrated the existence of a conflict. For example several of the provisions cited by the petitioner increase the level of a criminal charge or the level of criminal punishment, based upon predicate convictions for such offenses within a 5- or 10-year period (*see* Vehicle and Traffic Law § 1193 [1] [a], [c] [i], [ii]; [1] [d] [2], [4] [i], [ii]).

Several others relate to provisions of the Penal Law, which again, involve criminal charges. Part 136 does not have any application to criminal charges or punishment. Vehicle and Traffic Law § 1194 (2) (d) (as does Vehicle and Traffic Law § 1193 [2] [b]) establishes a minimum period of revocation, not a maximum. Vehicle and Traffic Law § 1198 (3) (a) applies to individuals who are either sentenced to probation or are conditionally discharged, and recites in part as follows:

> "Notwithstanding any other provision of law, the commissioner may grant a post-revocation conditional license, as set forth in paragraph (b) of this subdivision, to a person who has been convicted of a violation of subdivision two, two-a or three of section eleven hundred ninety-two of this article and who has been sentenced to a period of probation or conditional discharge, provided the person has satisfied the minimum period of license revocation established by law and the commissioner has been notified that such person may operate only a motor vehicle equipped with a functioning ignition interlock device. . . . *In exercising discretion relating to the issuance of a post-revocation conditional license pursuant to this subdivision, the commissioner shall not deny such issuance based solely upon the number of convictions for violations of any subdivision of section eleven hundred ninety-two of this article committed by such person within the ten years prior to application for such license.* Upon the termination of the period of probation or conditional discharge set by the court, the person may apply to the commissioner for restoration of a license or privilege to operate a motor vehicle in accordance with this chapter." (Emphasis supplied.)

Nothing in the record reveals that the petitioner applied for a conditional license. Moreover and apart from the foregoing, in reviewing respondents' determination dated December 6, 2012 (*supra*) it appears that the decision was based upon review of petitioner's entire driving record, not solely upon the number of violations of Vehicle and Traffic Law § 1192 over the previous 10 years. Lastly, petitioner's arguments concerning an alleged conflict with Vehicle and Traffic Law § 1193 (2) (b) (12) (b) and (e) are not justiciable in that, as noted above, the petitioner has not shown that her license was permanently revoked under those provisions.

## Lifetime License Denial

Because there is no evidence that a lifetime license denial has been imposed upon the petitioner (*see* 15 NYCRR 136.5 [b] [1], [2]), for the same reasons mentioned in the court's discussion of the five-year waiting period, the court is of the view that this claim fails to state a cause of action, by reason that there is no justiciable controversy.

 As noted, section 136.5 of the rules directs that if a person has five or more alcohol- or drug-related driving convictions or incidents in his or her lifetime (or three or four such convictions or incidents, and one or more serious driving offenses within a 25-year period), then the relicensing application must be denied (*see* 15 NYCRR 136.5 [b]). The petitioner indicates that the Vehicle and Traffic Law contains only one provision which imposes a lifetime prohibition with respect to issuance of a new license. That is Vehicle and Traffic Law § 1193 (2) (c) (3), where the licensee has been twice convicted of a violation of Vehicle and Traffic Law § 1192 (3), (4) or (4-a), or convicted of driving while intoxicated or ability impaired by drugs or a combination of drugs and alcohol, and where physical injury resulted from each underlying incident. In her view, section 136.5 (b) improperly expands the circumstances under which a lifetime revocation may be imposed which, she believes, conflicts with the unspoken legislative intent as embodied in Vehicle and Traffic Law § 1193 (2) (c) (3). In the court's view, the language in Vehicle and Traffic Law § 1193 (2) (c) (3) does not establish a legislative intent to prevent the Commissioner, in her discretion, from imposing a lifetime restriction on relicensing in other appropriate circumstances. Phrased differently, while the legislature has, by virtue of Vehicle and Traffic Law § 1193 (2) (c) (3), clearly spoken with regard to how a relicensing application should be handled in one specific situation, this does not operate to limit or preclude the exercise of her broad discretion under Vehicle and Traffic Law § 1193 (2) (c) (1). The court, accordingly discerns no conflict. Nor does the court perceive any conflict with other provisions of Vehicle and Traffic Law, including Vehicle and Traffic Law § 1193 (2) (b) (12), which, as noted, establishes minimum periods of revocation.

## 15 NYCRR 136.10

Section 136.10 recites as follows:

> "(a) Application by the holder of a post-revocation conditional license. Upon the termination of the period of probation set by the court, the holder of a

post-revocation conditional license may apply to the Commissioner for restoration of a license or privilege to operate a motor vehicle. An application for licensure may be approved if the applicant demonstrates that he or she:

"(1) has a valid post-revocation conditional license; and

"(2) has demonstrated evidence of rehabilitation as required by this Part.

"(b) Application after permanent revocation. The Commissioner may waive the permanent revocation of a driver's license, pursuant to Vehicle and Traffic Law section 1193(2)(b)(12)(b) and (e), only if the statutorily required waiting period of either five or eight years has expired since the imposition of the permanent revocation and, during such period, the applicant has not been found to have refused to submit to a chemical test pursuant to Vehicle and Traffic Law section 1194 and has not been convicted of any violation of section 1192 or section 511 of such law or a violation of the Penal Law for which a violation of any subdivision of such section 1192 is an essential element. In addition, the waiver shall be granted only if:

"(1) The applicant presents proof of successful completion of a rehabilitation program approved by the Commissioner within one year prior to the date of the application for the waiver; provided, however, if the applicant completed such program before such time, the applicant must present proof of completion of an alcohol and drug dependency assessment within one year of the date of application for the waiver; and

"(2) The applicant submits to the Commissioner a certificate of relief from civil disabilities or a certificate of good conduct pursuant to Article 23 of the Correction Law; and

"(3) The application is not denied pursuant to section 136.4 or section 136.5 of this Part; and

"(4) There are no incidents of driving during the period prior to the application for the waiver, as indicated by accidents, convictions or pending tickets. The consideration of an application for a waiver when the applicant has a pending ticket shall be held in abeyance until such ticket is disposed of

by the court or tribunal."

The petitioner maintains that subdivision (b) of section 136.10 conflicts with the provisions of Vehicle and Traffic Law § 1193 (2) (b) (12) (b) and (e) by including paragraphs (1) through (4) as additional requirements to relicensing, requirements not mentioned in Vehicle and Traffic Law § 1193 (2) (b) (12) (b) or (e).

In the court's view, nothing within the Vehicle and Traffic Law prohibits the Commissioner from imposing additional requirements upon an applicant seeking to regain his or her license after multiple alcohol- or drug-related convictions, provided they have a rational basis. Because the legislature has been very specific in directing that reissuance of a driver's license remain within the Commissioner's discretion, so long as the criteria are reasonably related to public safety and welfare, they may properly be adopted and utilized. The court discerns no conflict between section 136.10 and Vehicle and Traffic Law § 1193 (2) (b) (12) (b) and (e).

Accumulation of Points

The petitioner objects to the provisions of sections 136.5 (a) (2) and 132.1 (d), which define a serious driving offense to include a conviction of two or more violations for which five or more points are assessed, or where a driver has 20 or more points from any violations (see 15 NYCRR 136.5 [a] [2]; 132.1 [d]).[7] The petitioner proffers several hypothetical examples with regard to how use of the point system, particularly over the 25-year look-back period, is unfair from the standpoint that it can result in leaving other drivers, having far worse recent driving records, on the highways. In the court's view, consideration of accumulated points against an applicant's driver's license is not unreasonable when determining whether to restore the applicant's license.

Constitutional Issues, Generally

Before addressing the various constitutional issues raised by the petitioner the court must first observe that challenges to the constitutionality of a statute or regulation fall within two categories: a facial challenge to the statute or regulation, or a more limited as-applied challenge. With regard to a facial challenge, as stated in *Matter of Moran Towing Corp. v Urbach* (99 NY2d 443 [2003]):

"In order to prevail [a party] must surmount the

---

**7.** Point values are assessed under 15 NYCRR 131.3.

presumption of constitutionality accorded to legislative enactments by proof beyond a reasonable doubt. A party mounting a facial constitutional challenge bears the substantial burden of demonstrating that in any degree and in every conceivable application, the law suffers wholesale constitutional impairment. In other words, the challenger must establish that no set of circumstances exists under which the Act would be valid" (*id.* at 448 [internal quotation marks and citations omitted]; *see also Hunter v Warren County Bd. of Supervisors*, 21 AD3d 622, 624 [3d Dept 2005]).

On the other hand, "an as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case" (*People v Stuart*, 100 NY2d 412, 421 [2003]).

## Improper Delegation of Authority, Separation of Powers, and Preemption

The petitioner argues that part 136 is the product of an unconstitutionally broad delegation of legislative authority to the respondent; or, in the alternative, that the respondent, in adopting part 136, exceeded its legislative authority, and in so doing invaded an area preempted by the legislature. The court has structured its discussion in the same manner adopted by the Court of Appeals in *Boreali v Axelrod* (71 NY2d 1 [1987]).

## Delegation/Separation of Powers Issue

"The constitutional principle of separation of powers, implied by the separate grants of power to each of the coordinate branches of government, requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies" (*Bourquin v Cuomo*, 85 NY2d 781, 784 [1995] [internal quotation marks and citations omitted]; *see Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 821 [2003]; *Ellicott Group, LLC v State of N.Y. Exec. Dept. Off. of Gen. Servs.*, 85 AD3d 48, 54 [2011]). "While the separation of powers doctrine gives the Legislature considerable leeway in delegating its regulatory powers, enactments conferring authority on administrative agencies in broad or general terms must be interpreted in light of the limitations that the Constitution imposes" (*Boreali v Axelrod*, 71 NY2d 1, 9 [1987], *supra*, citing NY Const, art III, § 1). "However facially broad, a legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of powers doctrine permits" (*id.* [citation omitted]). Notably, it has

also been said: "some overlap between the three separate branches does not violate the constitutional principle of separation of powers" (*Clark v Cuomo*, 66 NY2d 185, 189 [1985]). "It is only when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated." (*Id.*)

Both parties have advanced arguments that the *Boreali* case supports their respective position. *Boreali* dealt with certain provisions of the Public Health Law[8] which restricted smoking in certain designated areas, namely, libraries, museums, theaters and public transportation facilities. The Public Health Council in *Boreali* had adopted regulations which expanded the smoking prohibition to a wide variety of indoor areas open to the public, areas not enumerated in the Public Health Law. In dual holdings, the Court of Appeals determined (1) that the regulations violated the doctrine of separation of powers (and for this reason were found to be invalid); but (2) that they did not violate principles of preemption.

In addressing the issue of whether the Public Health Council had exceeded her legislatively delegated authority, the Court of Appeals relied upon Public Health Law § 225 (5), which the Court summarized as authorizing the Public Health Council " 'to deal with any matters affecting . . . public health' " (*Boreali v Axelrod*, 71 NY2d 1, 9 [1987], quoting Public Health Law § 225 [5]). The Court of Appeals commented "[h]ere, we cannot say that the broad enabling statute in issue is itself an unconstitutional delegation of legislative authority" (*id.*). This finding, in the court's view, has application here, in that the respondent has been granted exclusive administrative authority over the revocation and issuance of driver's licenses (*see generally* Vehicle and Traffic Law §§ 501 [1]; 510 [6] [a]; *see specifically* Vehicle and Traffic Law § 1193 [2] [b] [12] [b]; 1193 [2] [c] [1]), and authority to adopt rules and regulations to carry out its responsibilities (*see* Vehicle and Traffic Law §§ 215 [a];[9] 1193 [2] [b] [12] [c]). Inasmuch as the delegation of authority here is at

8. Public Health Law, art 13-E, §§ 1399-o—1399-q.

9. Vehicle and Traffic Law § 215 recites:
 "(a) General. Subject to and in conformity with the provisions of the vehicle and traffic law and the constitution and laws of the state, the commissioner may enact, amend and repeal rules and regulations which shall regulate and control the exercise of the powers of the department and the performance of the duties of officers, agents and other employees thereof."

least as explicit, if not more so, than that in *Boreali*, the court finds that there was a proper delegation to the respondent.

The Court of Appeals in *Boreali* identified four criteria to define the line between administrative rulemaking and legislative policymaking: (1) whether the agency acted within its legislatively delegated policy goals; (2) whether the agency was merely filling in the details of broad legislation describing the overall policies to be implemented, as opposed to "[writing] on a clean slate" without the benefit of legislative guidance; (3) whether the legislature had repeatedly tried but failed to adopt legislation in this area; and (4) whether the agency has special expertise in the area (*see Boreali v Axelrod* at 11-14). Although, as noted, the Court of Appeals in *Boreali* found that there was a proper delegation of authority, it found that the Public Health Council exceeded such authority when, in developing non-smoking regulations, it considered social and economic policy issues, rather than confining itself strictly to public health issues. The Court of Appeals found that at that point the Public Health Council had intruded into "a uniquely legislative function" (*id.* at 12).

██ Here, part 136 falls squarely within the policy and purpose of the provisions of the Vehicle and Traffic Law to protect public safety and welfare. It has not been shown that part 136 was adopted pursuant to extraneous social or economic policy issues. As noted above, there are multiple legislative authorizations with regard to the Commissioner's power to regulate the issuance of driver licenses. The respondent did not "wr[ite] on a clean slate" by creating "its own comprehensive set of rules without . . . legislative guidance" (*id.* at 13). Rather, part 136 carries out the Commissioner's legislatively delegated authority. With regard to the legislature's past efforts to adopt legislation in this area the petitioner, in reply papers, has submitted evidence of a single prior instance in which the legislature attempted but failed to impose a 25-year look-back period for certain driving offenses.[10] In this respect, the petitioner has not demonstrated that, prior to the revision of part 136, the legislature had "repeatedly" failed to legislate in this area. Lastly, the court is of the view that public safety and welfare with regard to the operation of motor vehicles upon state roadways is a matter within the technical competence of the Commissioner.

---

**10.** *See* 2011 NY Senate Bill S6496.

Under all of the circumstances, the court finds that the adoption of part 136 did not overstep the line between administrative rulemaking and legislative policymaking.

Preemption and the Legislature's Intentions

■ As relevant here, where there is a perceived conflict between two coequal branches of government, the inquiry "includes an examination of both the scope of the statute authorizing the regulatory activity and the degree to which the administrative rules are either consistent or 'out of harmony' with the policies expressed in the statute" (*Boreali v Axelrod* at 15). Because the legislature had given the agency a "wide field for the exercise of its regulatory authority," and because the regulations were consistent with the legislative policy, the Court of Appeals, despite finding that the regulations violated the separation of powers doctrine, declined to find that the regulations violated the principle of legislative preemption (*id.*). Notably there, the Court found that there was nothing in the enabling legislation to suggest a legislative intention "to narrow the [legislative] mandate or exclude the area of smoking restrictions" (*id.*). Thus, even though the regulations expanded the number and variety of non-smoking locations this fact, of itself, did not establish that the Public Health Council had violated the principal of legislative preemption. The court is of the view that this is essentially what has occurred here. The petitioner points to no provision of the Vehicle and Traffic Law which expressly precludes or limits the promulgation of rules with regard to the reissuance of driver's licenses. The Vehicle and Traffic Law does not prohibit adoption of rules governing lifetime review of an applicant's driving history. Nor, in the court's view, does it prohibit the 25-year look-back period, the five-year waiting period, the A2 restricted license, the IID, or the lifetime denial of a license. For this reason, and mindful that the legislature has granted the Commissioner broad powers with regard to rulemaking and discretionary review, the court finds that the petitioner has not demonstrated that part 136 is inconsistent or out of harmony with the Vehicle and Traffic Law. Under all of the circumstances, the court finds, as the Court of Appeals did in *Boreali*, that the petitioner's arguments concerning legislative preemption have no merit.

The court finds that the petitioner has failed to demonstrate the merit of her claim with respect to a violation of the separation of powers doctrine, either as a facial challenge or as-applied to her personally.

Ex Post Facto Clause and Retroactivity

"[T]he Ex Post Facto Clause prohibits legislation that makes criminal an act not criminal when committed or increases punishment for previously committed offenses" (*Hunter v Warren County Bd. of Supervisors*, 21 AD3d 622, 624-625 [3d Dept 2005]). Phrased differently, the Ex Post Facto Clause "applies only to penal statutes" (*Matter of Cerro v Town of Kingsbury*, 250 AD2d 978, 979 [3d Dept 1998], citing *Kansas v Hendricks*, 521 US 346, 370-371 [1997]). The foregoing principle was applied to provisions of the New York Sex Offender Registration Act (SORA), where the Court found that certain provisions of SORA were not punitive, and therefore did not violate the Ex Post Facto Clause (*see People v Parilla*, 109 AD3d 20, 23-30 [1st Dept 2013]). From a review of the affidavit of Ida L. Traschen, First Assistant Counsel of DMV, it appears that the purpose of part 136 is to protect the public safety and welfare, not to impose punitive sanctions. In addition, it has been held that the ex post facto doctrine does not apply to administrative regulations (*see Matter of Robinson v Bennett*, 300 AD2d 715, 716 [3d Dept 2002]; *Matter of Suce v Taylor*, 37 AD3d 886, 887 [3d Dept 2007]). Apart from the foregoing, it well established that laws or regulations are not retroactive where they apply to future transactions merely because that will require consideration of antecedent events (*see Matter of Miller v DeBuono*, 90 NY2d 783 [1997]; *Forti v New York State Ethics Commn.*, 75 NY2d 596 [1990]; *Matter of Talisman Energy USA, Inc. v New York State Dept. of Envtl. Conservation*, 113 AD3d 902, 904 [3d Dept 2014]).

██ Ms. Traschen avers in her supporting affidavit that in November of 2012 officials at DMV became aware of cases where individuals with multiple alcohol-related offenses were relicensed after a minimum revocation period, and that repeat offenders were responsible for a disproportionate amount of alcohol-related injuries statewide. For this reason, DMV determined, in February 2012, that it was necessary to develop more rigorous criteria for relicensing. Incident to the foregoing, it was decided that all pending license applications should be temporarily held, so that they could be reviewed in a uniform fashion under the new regulations. Thereafter, on September 25, 2012, DMV filed a Notice of Emergency and Proposed Rulemaking in relation to 15 NYCRR parts 3, 134 and 136. Because no license had yet been issued to the petitioner, and petitioner's application had not been finally determined, the court is of the

view that the respondent could properly utilize revised part 136 in its review. The court finds that the petitioner has failed to demonstrate the merit of her claim with respect to a violation of the Ex Post Facto Clause, either as a facial challenge or as-applied to her personally. Incidental to the foregoing, the court finds that the petitioner is not entitled to a review of her license application under former part 136.

Due Process

■ "It is well established that a driver's license is a substantial property interest that may not be deprived without due process of law" (*Pringle v Wolfe*, 88 NY2d 426, 431 [1996], citing *Bell v Burson*, 402 US 535, 539 [1971]). Although the Constitution recognizes a right to travel within the United States, referred to as the "right to free movement" (*see Selevan v New York Thruway Auth.*, 584 F3d 82, 99 [2d Cir 2009]), it does not recognize a fundamental "right to drive" (*see Miller v Reed*, 176 F3d 1202, 1205-1206 [9th Cir 1999]). As stated in *Bell v Burson*:

> "*Once licenses are issued*, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued li-censes thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." (*Bell v Burson* at 539 [emphasis sup-plied], citing *Sniadach v Family Finance Corp. of Bay View*, 395 US 337 [1969], and *Goldberg v Kelly*, 397 US 254 [1970]; *see also Scott v Williams*, 924 F2d 56, 58 [4th Cir 1991].)

In addition, it has been held that a due process right arises only where the applicant has a "legitimate claim of entitlement" to the license, not a merely a "unilateral expectation" (*see Baer v White*, 2009 WL 1543864, *8, 2009 US Dist LEXIS 46412, *23 [ND Ill, June 3, 2009, No. 08-C-3886]; *see generally Board of Regents of State Colleges v Roth*, 408 US 564, 577 [1972]). In this instance, the petitioner no longer has a license. Under Vehi-cle and Traffic Law § 1193 (2) (c) (1) reissuance of a license is in the discretion of the Commissioner. The petitioner, after having had her license revoked, may be viewed as possessing, at best, a unilateral expectation that she would receive a license, not a bona fide right to same. Under such circumstances, her right to due process is not implicated. In addition, with regard to review of her license application under part 136, it is well settled that

there is no due process right in a particular state-created review procedure (*see Meyers v City of New York*, 208 AD2d 258, 263 [2d Dept 1995]). Apart from the foregoing, if it were necessary to reach the issue, the court would find that there is sufficient protection available to the petitioner to fulfill the requirements of procedural due process, by way of an administrative appeal, followed (if necessary) by review of an adverse agency determination pursuant to CPLR article 78. The court finds that the petitioner has failed to demonstrate the merit of her claim with respect to a violation of the Due Process Clause, either as a facial challenge or as applied to her personally.

Administrative Delay

As noted, the petitioner submitted her relicensing application in April 2012 and her application was denied on December 6, 2012. The petitioner maintains that the respondents improperly delayed the determination until after the revised part 136 took effect on September 25, 2012. The petitioner argues that the delay in processing her application "violated due process, violated notions of fundamental fairness, violated respondent's duty to follow the law in effect at the time of petitioner's application, violated respondents' duty to process petitioner's application in a timely manner, was arbitrary and capricious, and/or constituted an abuse of discretion."

Respondent's temporary suspension of the review of new license applications was within her inherent discretionary authority, consistent with her statutory duty to oversee issuance of licenses (*see Sheffield Towers Rehabilitation & Health Care Ctr. v Novello*, 293 AD2d 182, 186 [2d Dept 2002]; *Matter of Schubert v New York State Dept. of Motor Vehs.*, Sup Ct, Albany County, Oct. 1, 2012, McNamara, J., index No. 3442-12). Moreover, there does not appear to be a specific deadline within the Vehicle and Traffic Law for the respondent to process or complete its consideration of an application for a driver's license (*see Matter of Wolf v Novello*, 297 AD2d 746, 747 [2d Dept 2002]).

The court discerns nothing improper in holding petitioner's application open for period of time until it finalized revisions to part 136, after which it resumed its review.

CPLR Article 78 Relief

The court observes that the court's role in reviewing an administrative determination is not to substitute its judgment for that of the agency, but simply to ensure that it is not made in violation of lawful procedure or affected by an error of law,

and was not arbitrary and capricious or an abuse of discretion (*see* CPLR 7803 [3]; *Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]; *Matter of Terrace Ct., LLC v New York State Div. of Hous. & Community Renewal*, 18 NY3d 446, 454 [2012]; *Matter of Warder v Board of Regents of Univ. of State of N.Y.*, 53 NY2d 186, 194 [1981]; *Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363 [1987]; *Akpan v Koch*, 75 NY2d 561, 570 [1990]; *Matter of Prestige Towing & Recovery, Inc. v State of New York*, 74 AD3d 1606 [3d Dept 2010]). " 'An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts' " (*Matter of Murphy v New York State Div. of Hous. & Community Renewal*, 21 NY3d 649, 652 [2013], quoting *Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009], citing *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]).

As discussed above, the court finds that part 136 does not violate the cited provisions of the New York or Federal Constitution, or conflict with the Vehicle and Traffic Law (or other cited laws). The court finds that part 136 is compatible and in keeping with the legislature's delegation of authority as set forth in the Vehicle and Traffic Law, and was adopted in the interest of public safety and welfare. The court finds that the 2012 amendment of part 136 has a rational basis, was not arbitrary or capricious or an abuse of discretion, and is not affected by an error of law.

With regard to the December 6, 2012 determination (*supra*), the court observes that the respondent reviewed the petitioner's driving record and found that it "constituted a serious lack of regard on your part for the safety and welfare of other users of the highway." The determination was made within the Commissioner's discretion, under the statutory authority set forth in Vehicle and Traffic Law § 1193 (2) (c) (1). The court finds that the determinations were not made in violation of lawful procedure, are not affected by an error of law, and are not irrational, arbitrary and capricious, or constitute an abuse of discretion.

To the extent that the petitioner seeks an order pursuant to CPLR 7803 (1) to compel the respondents to issue her a driver's license, relief in the nature of mandamus is only appropriate where the right to relief is "clear" and the duty sought to be enjoined is performance of an act commanded to be performed by law, purely ministerial and involving no exercise of discretion (*Matter of Hamptons Hosp. & Med. Ctr. v Moore*, 52 NY2d 88,

96 [1981]; *Matter of Legal Aid Socy. of Sullivan County v Scheinman*, 53 NY2d 12, 16 [1981]; *Matter of Maron v Silver*, 58 AD3d 102, 124-125 [3d Dept 2008], *lv denied* 12 NY3d 909 [2009]). " 'The general principle [is] that mandamus will lie against an administrative officer only to compel him [or her] to perform a legal duty, and not to direct how he [or she] shall perform that duty' " (*Klostermann v Cuomo*, 61 NY2d 525, 540 [1984], quoting *People ex rel. Schau v McWilliams*, 185 NY 92, 100 [1906]). In this instance, the issuance of a driver's license is within the discretion of the Commissioner. For this reason, the remedy of mandamus to compel will not lie.

The petitioner has pointed out many other instances of alleged conflicts and inconsistencies between part 136 and provisions of existing law which have not been specifically mentioned herein. Several of petitioner's arguments (some of which have been noted) rely upon hypothetical circumstances not shown to directly pertain to the petitioner. The court has reviewed and considered all of the petitioner's remaining arguments and contentions with regard to part 136, and finds them to be without merit. The court is particularly cognizant of the argument advanced by the petitioner, with respect to section 136.5 (d), that while the Commissioner may deviate from the requirements of paragraph (b) by reason of "unusual, extenuating and compelling circumstances," that in practice this is never done. The petitioner has presented no evidence to support this blanket assertion. Nor, is there evidence that the petitioner sought to avail herself of this provision. The court concludes that the petition has no merit, and that respondents' motion for summary judgment must be granted. The court is mindful that the petitioner has requested that the court issue a number of declarations with respect to her request for judgment pursuant to CPLR 3001. Because it only appears that sections 136.10 and 136.5 (a) and (b) directly apply to the petitioner, the court will limit its declaration to these provisions.

Accordingly, it is ordered, that respondents' motion for summary judgment is granted; and it is ordered, adjudged and declared, that 15 NYCRR part 136 does not constitute a facial violation of the separation of powers doctrine, the Ex Post Facto Clause, or the Due Process Clause; and it is further ordered, adjudged and declared, that 15 NYCRR part 136, as applied to the petitioner, does not violate the separation of powers doctrine, the Ex Post Facto Clause, or the Due Process Clause; and it is further ordered, adjudged and declared, that 15 NYCRR

part 136, as applied to the petitioner and to the extent discussed herein, does not conflict with the provisions of the Vehicle and Traffic Law or Penal Law; and it is further ordered, adjudged and declared, that the provisions of the Vehicle and Traffic Law, as applied to the petitioner, do not constitute an unconstitutional delegation of legislative authority to the respondent with regard to issuance of driver's licenses; and it is ordered, adjudged and declared, that 15 NYCRR part 136, as applied to the petitioner, does not constitute an act in excess of respondent's legislatively delegated authority; and it is ordered and adjudged, with respect to that portion of the petition which seeks relief pursuant to CPLR article 78, that the petition be and hereby is dismissed.